Daniel Poulson
Aadika Singh
Assistant Federal Defenders
Federal Public Defender
for the District of Alaska
188 W. Northern Lights Blvd., Suite 700
Anchorage, Alaska 99503
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: daniel_poulson@fd.org
aadika_singh@fd.org

*Counsel for Petitioner*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| FABIOLA PILLE-VALERIO,<br><br>              Petitioner,<br><br>vs.<br><br>BRANDON JONES, SUPERINTENDENT, HILAND MOUNTAIN CORRECTIONAL FACILITY;<br><br>LAURA HERMOSSILO, FIELD OFFICE DIRECTOR, SEATTLE FIELD OFFICE, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT;<br><br>TODD LYONS, ACTING DIRECTOR, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT;<br><br>MARKWAYNE MULLIN, SECRETARY OF U.S. DEPARTMENT OF HOMELAND SECURITY;<br><br>TODD BLANCHE, ACTING UNITED STATES ATTORNEY GENERAL,<br><br>              Respondents. | Case No. 3:26-cv-00194-SLG<br><br>**REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND OPPOSITION TO MOTION TO DISSOLVE** |

COMES NOW the Petitioner, Fabiola Pille-Valerio, by and through counsel and hereby

submits her Reply in support of the Motion for a Temporary Restraining Order and

Opposition to Respondent's Motion to Dissolve the TRO. For the reasons below, this Court should maintain the TRO, or convert the TRO to a preliminary injunction, and order Respondents to return Petitioner to the District of Alaska.

## INTRODUCTION

As the court is aware, counsel for Petitioner provided Respondents with notice of Petitioner's habeas petition and motion for temporary restraining order on Tuesday, May 12 at 4:36pm. via email. Petitioner complied with Federal Rule of Civil Procedure 4(i) by effectuating personal service on AUSA Jackie Traini, the chief of the civil division at the USAO. Despite having received notice that Petitioner had filed a habeas petition and accompanying motion for a temporary restraining order, the Government chose to remove Petitioner from the District of Alaska in the early morning hours of Wednesday, May 13. This is not an uncommon fact pattern, and one that has played out in countless district courts across the country. This Court should exercise its supervisory powers to ensure that its orders are enforced.

As to the underlying merits, Respondents incorrectly argue that Petitioner "must be detained" under 8 U.S.C. § 1231(a)(2) because she is subject to a final order of removal. But § 1231(a)(2) mandates detention only "during the removal period." The removal period is 90 days. 8 U.S.C. § 1231(a)(1)(A), (a)(2). After that period expires, the individual is not subject to mandatory-detention under § 1231(a)(2), but rather the separate post-removal-period provisions of § 1231(a)(3) and § 1231(a)(6). The Ninth Circuit has described this statutory structure directly: § 1231(a) provides "mandatory detention during a ninety-day

removal period, and discretionary detention beyond the removal period." *Padilla-Ramirez v. Bible*, 882 F.3d 826, 831 (9th Cir. 2017).

Second, Respondents mischaracterize the relief at issue. Ms. Pille-Valerio does not ask this Court to reopen, rescind, or vacate the 2004 in-absentia removal order. That relief is being pursued through the immigration-court process. Exh. P-2 (Motion to Reopen and Rescind In-Absentia Order). This habeas action concerns present physical custody, the transfer of Petitioner to parts unknown, inhibiting her access to counsel, and denial of meaningful judicial review. The REAL ID Act channels review of final removal orders; it does not bar habeas review of Petitioner's present detention.

Rather than subject Petitioner to arbitrary and prolonged detention, this Court should issue a preliminary injunction directing that Respondents transport Petitioner to the District of Alaska and release her from ICE custody. Allowing Ms. Pille-Valerio to remain in Alaska preserves the status quo, ensures access to counsel, protects this Court's ability to adjudicate the habeas petition, and prevents immediate harm while the immigration-court matter proceed.

## ARGUMENT

### A. Petitioner is Not Subject to Mandatory Detention Under § 1231(a)(2).

Respondents' primary argument is that Petitioner is subject to a final removal order and therefore must be detained under § 1231(a)(2). That is not what the law says. Section 1231(a)(1)(A) provides that, except as otherwise provided, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a

period of 90 days." Section 1231(a)(2), in turn, provides that "[d]uring the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(1)(A), (a)(2). The mandatory detention provision therefore applies only during the removal period.

The removal period begins on the latest of three dates: the date the removal order becomes administratively final; if judicial review is sought and a court orders a stay, the date of the court's final order; or, if the person is detained or confined other than under immigration process, the date of release from that detention or confinement. 8 U.S.C. § 1231(a)(1)(B).

Respondents claim that the order of removal became administratively final more than twenty-two years ago. If that is so, then the 90-day mandatory detention period expired more than twenty-two years ago - unless Respondents identify a statutory basis for a new removal period. They have not done so.

Where a noncitizen does not leave or is not removed within the 90-day removal period, the individual, "pending removal, shall be subject to supervision." 8. U.S.C. § 1231(a)(3). "As mandated by Congress, the default status after the 90-day removal period is therefore release on conditions, not detention." *Alva v. Kaiser*, No. 25-CV-06676-RFL, 2025 WL 2419262, at *3 (N.D. Cal. Aug. 21, 2025) (concluding removal period began when removal order was reinstated); *Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025) (removal became final "long ago," making petitioner subject to presumption of supervision).

The Ninth Circuit has already recognized this distinction. In *Padilla-Ramirez*, the court explained that § 1231(a) provides for mandatory detention during the 90-day removal period and discretionary detention beyond that period. 882 F.3d at 831. Respondents' opposition collapses those two distinct statutory categories.

The Court should reject that statutory overstatement. Respondents have not shown that Ms. Pille-Valerio is within a current 90-day removal period. Nor have they shown any individualized custody determination, flight-risk finding, danger finding, custody review, or other basis for continued detention under the post-removal-period framework.

**B. *Zadvyas* Does not Give Respondents an Automatic Six-Month Detention Entitlement.**

Respondents also rely on *Zadvydas v. Davis*, 533 U.S. 678 (2001) to support their argument that Petitioner's detention comports with due process, but *Zadvydas* does not support their categorical position. *Zadvydas* construed § 1231(a)(6), the post-removal-period detention provision. It did so to avoid the serious constitutional concerns that would arise if the statute authorized indefinite detention. The Court held that post-removal-period detention is limited to a period reasonably necessary to effect removal, and it adopted a six-month presumptive period for analyzing whether removal is reasonably foreseeable. *Id.* at 699–701.

*Zadvydas* is a limitation *on* detention, not a blank check *for* detention. It does not hold that DHS may automatically detain any person with a decades-old removal order for six months without process, regardless of the statutory removal-period structure, the

Case 3:26-cv-00194-SLG    Document 13    Filed 05/14/26    Page 5 of 12

detainee's concerns about access to counsel, where there is a pending motion to reopen the prior removal order, and where the detainee has been held without regard for the individual's family ties and in spite of any showing of risk to the public or risk of flight. It also does not convert § 1231(a)(6)'s discretionary "may be detained" language into § 1231(a)(2)'s mandatory "shall detain" language.

*Zadvydas* therefore does not defeat habeas review. At most, *Zadvydas* confirms that post-removal-period detention must remain reasonably related to effectuating removal and must be constitutionally limited. That does not justify dissolving the TRO here.

### C. This Court Has Habeas Jurisdiction Over Present Custody and Transfer of Petitioner.

Respondents argue that this Court lacks jurisdiction to hear Petitioner's habeas claims because she is seeking to collaterally attack her 2004 removal order. But Petitioner is not asking that the Court adjudicate the lawfulness of the 2004 removal order, but rather whether detention and transfer to another district complies with due process.

Ms. Pille-Valerio does not ask this Court to reopen, rescind, or vacate the 2004 in-absentia order. She is pursuing that remedy through the immigration-court process. Exh. P-2. The habeas petition challenges her present physical custody and threatened transfer. It also seeks relief preserving access to counsel and this Court's ability to adjudicate the legality of that custody.

The distinction matters. The REAL ID Act channels review of final removal orders to the courts of appeals, but it does not eliminate habeas review of present physical

Case 3:26-cv-00194-SLG     Document 13     Filed 05/14/26     Page 6 of 12

detention. The core of habeas concerns present custody. *Doe v. Garland* confirms the immediate-custodian and district-of-confinement rules in immigration detention habeas cases. 109 F.4th 1188, 1197–99 (9th Cir. 2024). Ms. Pille-Valerio filed in the District where she is physically detained and named her immediate physical custodian, along with the federal officials responsible for the immigration detention challenged here.

Respondents' jurisdiction argument would improperly transform every habeas challenge by a person with a removal order into a petition for review. That is not the law. The Court need not decide the validity of the 2004 order to decide whether Respondents may detain and transfer Ms. Pille-Valerio now without lawful custody process and in a manner that impairs access to counsel and meaningful review.

**D. The Government Has Not Produced the List of Free Legal Service Providers; a Checked Box Is Not the Document Required by Statute and Regulation.**

Respondents ask this Court to dissolve the TRO based on a decades-old Notice to Appear (NTA) and a checked box on a form. They contend that the NTA advised Ms. Pille-Valerio of her right to counsel, that a box indicates she was provided a list of free legal services, that oral notice was provided in English and Spanish, and that she signed the certificate of service. That is not enough.

By statute, the NTA inform the respondent of "the right of the alien to be represented by counsel" and of "the availability of free legal services programs." 8 U.S.C. § 1229(a)(1)(E). The regulations likewise require that the immigration court provide respondents with a list of available free legal service providers. *See* 8 C.F.R. § 1003.61 et

seq.; 8 C.F.R. § 1240.10(a)(2). The list is not a collateral courtesy. It is part of the statutory and regulatory notice structure designed to make the right to counsel meaningful.

Here, Respondents have not produced the list. They have produced only a form with a checked box. But the complete Record of Proceedings does not contain the list of free legal service providers allegedly served with the NTA. Without the list, the document the Government fails to establish proper service of the notice package. It is also inadequate to prove that Ms. Pille-Valerio received the required legal-services information, understood its significance, or had a meaningful opportunity to obtain counsel.

Nor can the Court assume the contents, language, accuracy, or existence of the missing list. The Court has no document showing which free legal service providers were listed, whether the list was current, whether it was geographically relevant, whether it was in a language Ms. Pille-Valerio could understand, or whether it was actually attached to the NTA she received. Respondents ask the Court to infer all of that from a checked box. That inference is not enough to dissolve emergency relief.

The Ninth Circuit has repeatedly recognized the significance of the right to counsel in immigration proceedings. In *Biwot v. Gonzales*, the court held that a detained respondent was denied the statutory right to counsel where the practical opportunity to secure counsel was inadequate. 403 F.3d 1094, 1098–99 (9th Cir. 2005). In *Montes-Lopez v. Holder*, the Ninth Circuit held that denial of the statutory right to counsel in immigration proceedings does not require a separate showing of prejudice. 694 F.3d 1085, 1092–93 (9th Cir. 2012).

The Court need not resolve these issues now, but Respondents cannot dissolve the TRO by treating the matter as effectively resolved in their favor. Absent proof that Petitioner was provided with adequate notice and a list of legal providers, there remain serious questions of law which justify preserving the status quo.

### E. The TRO Preserves the Status Quo.

Respondents repeatedly characterize the requested relief as mandatory. But the Court's no-transfer TRO is prohibitory: it prevents Respondents from moving Ms. Pille-Valerio out of the District while the Court adjudicates the matter. It preserves the status quo that existed when the habeas petition was filed.

That distinction is important. Allowing Ms. Pille-Valerio to remain in Alaska pending adjudication does not require vacating the removal order. It does not compel the Government to confer immigration status. It simply prevents Respondents from altering the circumstances of custody in a way that would impair counsel access, interfere with the pending motion to reopen, and complicate this Court's jurisdiction over present custody.

The no-transfer TRO is especially appropriate in a habeas case. The petition was filed in this District because Ms. Pille-Valerio was physically detained here. The Ninth Circuit has emphasized that habeas jurisdiction turns on custody and the proper custodian. *Doe*, 109 F.4th at 1197–99. A transfer out of Alaska would not be a neutral event. It would impair practical access to counsel and risk undermining the Court's ability to adjudicate the petition on a complete record.

### F.  Petitioner Has Shown Irreparable Harm.

Respondents minimize the harm to Petitioner as "ordinary" detention or "ordinary" transfer. That misstates the injury. Ms. Pille-Valerio is an Alaska resident of approximately twenty years. Her children are United States citizens and live in Alaska. She has no criminal history. She is attempting to litigate a motion to reopen a decades-old in absentia order based on serious notice and counsel defects. Her counsel and family evidence are in Alaska.

Transfer out of Alaska would immediately impair her ability to communicate confidentially with counsel, gather evidence, obtain declarations, and litigate the motion to reopen. *See* Exhibit P-4 (affidavit of Lauren Hedge). These are not speculative harms, but concrete injuries directly tied to the pending habeas petition and immigration proceedings.

Respondents' cases concerning generalized loss of liberty do not resolve this case. Petitioner is not relying solely on the fact of her detention but also the combined effects caused by her detention, transfer to another district and the limitations it imposes on her ability to access counsel and meaningfully plead her case in the immigration proceedings. These impairments constitute irreparable harm that justifies preserving the status quo.

### G.  The Equities and Public Interest Favor Transferring Petitioner to Alaska and Ordering Her Release from ICE Detention

Respondents invoke the generalized public interest in enforcement of immigration laws. Petitioner does not dispute that the Government has an interest in *lawful* immigration enforcement. But there is no public interest in unlawful detention based on a defective

order that was issued without due process. Similarly, the public interest does not support impairing a detainee's access to counsel.

The public interest favors orderly process. It favors correct application of the detention statute. It favors allowing Ms. Pille-Valerio to litigate her motion to reopen in her home state, without being transferred away from counsel and evidence.

Finally, maintaining the TRO and converting it to a preliminary injunction imposes a limited burden on Respondents. It does not decide the validity of the 2004 order. It simply maintains the status quo while the Court considers whether Ms. Pille-Valerio's detention and transfer are lawful.

## CONCLUSION

Respondents have not shown that the TRO should be dissolved. Their argument depends on an overbroad reading of § 1231(a)(2), an overreading of *Zadvydas*, and a mischaracterization of the habeas petition as a collateral attack on the 2004 order. Ms. Pille-Valerio challenges her present custody and transfer out of the district. At minimum, she has raised serious questions going to the merits, shown concrete irreparable harm, and demonstrated that the balance of equities and public interest favor preserving the status quo.

For these reasons, Petitioner respectfully requests that the Court deny Respondents' request to dissolve the TRO and maintain the order prohibiting transfer out of the District while this habeas action proceeds.

DATED this 14th day of May, 2026.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

*/s/ Daniel Poulson*
Daniel Poulson
Assistant Federal Defender

Certificate of Service:
I certify that on May 14, 2026, a copy of the
foregoing document, with attachments, was
served electronically on:

**Joshua Aaron Traini**
DOJ-USAO
222 W 7th Ave
Ste #9, Room 253
Anchorage, AK 99513
907-271-1629
Email: josh.traini@usdoj.gov

*/s/ Daniel Poulson*