Nicolas A. Olano
Alaska Bar No. 2105042
Florida Bar No. 0528961
NATIONS LAW GROUP
2525 Blueberry Road, Suite 207
Anchorage, Alaska 99503
Tel: (907) 770-0909
Fax: (907) 770-0902
Email: nicolas@nationslawak.com
Attorney for Petitioner

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| Faviola PILLE-VALERIO<br><br>                    Petitioner,<br><br>        v.<br><br>Brandon JONES, et al.,<br><br>                    Respondents. | Case No. 3:26-cv-00194-SLG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S SUPPLEMENTAL HABEAS PETITION** |

## I.      INTRODUCTION

This case began as an emergency habeas challenge to ICE's detention of Petitioner Faviola Pille-Valerio in Alaska. ICE arrested Petitioner in Anchorage on May 11, 2026, and detained her at Hiland Mountain Correctional Facility. Dkt. 17 at 1; Dkt. 1 at 2. At that time, Respondents relied on a 2004 in absentia removal order as the asserted basis for detention and removal. Dkt. 11 at 2–3; Dkt. 11-5 at 1. Petitioner filed this habeas action the next day, seeking immediate protection against unlawful custody and removal while she pursued reopening of the underlying immigration proceedings. Dkt. 1 at 2–3; Dkt. 4 at 1–2.

The Court has already addressed the initial emergency posture. It entered temporary relief prohibiting removal from the District of Alaska, Dkt. 4 at 2 and later recognized that the applicable custody statute was central to the legality of Petitioner's detention. The Court also recognized that Petitioner's pending motion to reopen affected whether the 2004 in absentia order could be treated as final and executable for detention purposes. In that posture, the Court noted that "the present record suggests that Petitioner's detention is governed by § 1226(a), under which she may seek a bond hearing before an Immigration Judge pursuant to § 1226(a)(2)." Dkt. 17 at 8.

The case has now moved past that preliminary uncertainty. After this habeas action was filed, the Immigration Court granted Petitioner's motion to reopen removal proceedings. That order changed the detention posture in a legally material way. Petitioner no longer has an executable final order of removal. She is now in pending removal proceedings under INA § 240, 8 U.S.C. § 1229a.

But the reopening order did not end the habeas injury. Petitioner remains detained at the Northwest ICE Processing Center in Tacoma, Washington. She has not received a custody redetermination hearing under 8 U.S.C. § 1226(a). Respondents are expected to contend that, notwithstanding reopening, Petitioner is categorically barred from bond under 8 U.S.C. § 1225(b)(2) and *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025), because DHS alleges she entered without inspection. Dkt. 20 at 1–2; Dkt. 11-3 at 1.

Petitioner is no longer asking the Court to address detention under a final-order rationale. The live issue before the Court is to address the legality of her current detention during reopened removal proceedings, where Respondents continue to hold her without a neutral custody hearing and without an Immigration Judge having authority to consider bond.

Detention pending a decision on removal is governed by 8 U.S.C. § 1226(a), unless Congress has placed the noncitizen in a specific mandatory-detention category. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018); *Rodriguez Diaz v. Garland*, 53 F.4th 1189,

1195–96 (9th Cir. 2022); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1059–62 (9th Cir. 2008). Respondents have identified no criminal mandatory-detention ground under § 1226(c). Petitioner is therefore entitled to the ordinary custody process available under § 1226(a): a hearing before an Immigration Judge with authority to order release on bond or conditional parole. 8 U.S.C. § 1226(a)(2); 8 C.F.R. §§ 1003.19(a), 1236.1(d)(1).

The requested relief is narrow. Petitioner *does not* ask this Court to adjudicate removability, decide her applications for immigration relief, or interfere with the Immigration Court's merits jurisdiction. She asks *only* for lawful custody process: a prompt § 1226(a) custody redetermination hearing before an Immigration Judge with authority to order release, or release under reasonable conditions if Respondents do not provide that hearing.

## II.     RELEVANT FACTS

Petitioner filed this habeas action while detained in Alaska. At that time, Respondents relied on Petitioner's 2004 in absentia removal order as the asserted basis for detention. Dkt. 1 at 2; Dkt. 11 at 2–3; Dkt. 11-5 at 1.

The Court already recognized the importance of the custody-statute issue. In its May 19, 2026 order, the Court noted that the applicable detention statute determines the scope of custody authority and that Petitioner's pending motion to reopen affected whether the 2004 order could be treated as final and executable. The Court stated that "the present record suggests that Petitioner's detention is governed by § 1226(a), under which she may seek a bond hearing before an Immigration Judge pursuant to § 1226(a)(2)." Dkt. 17 at 8.

On June 10, 2026, the Immigration Court granted Petitioner's motion to reopen. See Ex. A. Petitioner is now in pending removal proceedings under INA § 240, 8 U.S.C. § 1229a. She is no longer detained to execute a final removal order.

Petitioner remains detained at the Northwest ICE Processing Center in Tacoma, Washington. She has not received a § 1226(a) custody redetermination hearing. She has

not received a hearing before an Immigration Judge with authority to order release on bond or conditional parole. She remains separated from her five United States citizen children and her Alaska community. Dkt. 20 at 1–2; Dkt. 1 at 2; Dkt. 1-1 at 1; Dkt. 1-2 at 1.

### III.  LEGAL FRAMEWORK

The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an IJ. See 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, see 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, see 8 U.S.C. § 1226(c).

Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, see 8 U.S.C. § 1231(a)–(b).

This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).  The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

In 1997, after Congress amended the INA through IIRIRA, EOIR and the then-Immigration and Naturalization Service issued an interim rule to interpret and apply IIRIRA. Specifically, under the heading of "Apprehension, Custody, and Detention of [Noncitizens]," the agencies explained that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. at 10323 (emphasis added). The agencies thus made clear that individuals who had entered without inspection were eligible for consideration for bond and bond hearings before IJs under 8 U.S.C. § 1226 and its implementing regulations.

Thus, in the decades that followed, most people who entered without inspection and were placed in standard removal proceedings received bond hearings, unless their criminal history rendered them ineligible. That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. See 8 U.S.C. § 1252(a) (1994); see also H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," claims that all persons who entered the United States without inspection shall now be deemed "applicants for admission" under 8 U.S.C. § 1225, and therefore are subject to mandatory detention provision under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended and affects those who have resided in the United States for months, years, and even decades.

In a May 22, 2025, unpublished decision from the Board of Immigration Appeals (BIA), EOIR adopts this same position.  That decision holds that all noncitizens who entered the United States without admission or parole are considered applicants for admission and are ineligible for immigration judge bond hearings.

ICE and EOIR have adopted this position even though federal courts have rejected this exact conclusion. For example, after IJs in the Tacoma, Washington, immigration court stopped providing bond hearings for persons who entered the United States without inspection and who have since resided here, the U.S. District Court in the Western District of Washington found that such a reading of the INA is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United States. *Rodriguez Vazquez v. Bostock*, --- F. Supp. 3d --- 2025 WL 1193850 (W.D. Wash. Apr. 24, 2025); see also *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at \*8 (D. Mass. July 7, 2025) (granting habeas petition based on same conclusion).

DHS's and DOJ's interpretation defies the INA. As the *Rodriguez Vazquez* court explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner.

Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, to "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. See 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such people makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the *Rodriguez Vazquez* court explained, "[w]hen Congress creates "specific exceptions" to a statute's applicability, it "proves" that absent those exceptions, the statute generally applies. *Rodriguez*

*Vazquez*, 2025 WL 1193850, at \*12 (citing Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010)).

Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Accordingly, the mandatory detention provision of § 1225(b)(2) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended.

## IV. AFTER REOPENING, PETITIONER IS DETAINED UNDER § 1226(a), NOT § 1231

Section 1231 governs detention after a removal order becomes administratively final and executable. 8 U.S.C. § 1231(a). The removal period begins on the latest of either: (1) the date the order becomes administratively final; (2) the date of the reviewing court's final order if judicial review and a stay are in place; or (3) the date the noncitizen is released from non-immigration confinement. 8 U.S.C. § 1231(a)(1)(B).

Section 1226, by contrast, governs detention "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1226(a) authorizes detention during pending removal proceedings, but also authorizes release on bond or conditional parole. 8 U.S.C. § 1226(a)(2).

The Ninth Circuit has recognized that § 1226(a) governs detention where the noncitizen is detained pending completion of proceedings and removal is not presently executable. *Prieto-Romero*, 534 F.3d at 1059–62. In *Rodriguez Diaz*, the Ninth Circuit again described § 1226(a) as the ordinary custody provision for detention pending removal proceedings, and explained that the implementing regulations permit a detained noncitizen to seek bond before an Immigration Judge. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1195–96 (9th Cir. 2022).

Petitioner's case is governed by § 1226(a). This is because the Immigration Court has reopened removal proceedings. Petitioner is no longer detained under an executable final removal order. She is detained while removal proceedings are pending. Respondents have not identified any criminal mandatory-detention basis under § 1226(c). The proper statute is therefore § 1226(a).

## V. SECTION 1225(b)(2) DOES NOT AUTHORIZE CATEGORICAL NO-BOND DETENTION IN THIS POSTURE

Respondents may argue that Petitioner is an "applicant for admission" under the INA and is therefore subject to mandatory detention under § 1225(b)(2). That argument overreads § 1225 and displaces § 1226.

Section 1225 is titled "Inspection by immigration officers." It governs inspection and processing of applicants for admission. 8 U.S.C. § 1225. Section 1226 is titled "Apprehension and detention of aliens." It governs the arrest and detention of noncitizens pending a decision on whether they are to be removed. 8 U.S.C. § 1226(a). The Supreme Court has recognized that § 1226(a) is the general detention provision for noncitizens pending removal proceedings, while § 1225 governs detention of applicants for admission. *Jennings*, 583 U.S. at 288–89, 303.

Petitioner was not arrested at a port of entry. She was not detained during inspection. She was arrested in the interior after approximately twenty years of residence in Alaska. She is now in reopened § 240 proceedings. 8 U.S.C. § 1229(a); INA § 240(a).

Her detention is detention pending removal proceedings, not inspection-stage detention. Dkt. 11-1 at 1; Dkt. 11-3 at 1; Dkt. 17 at 1; Dkt. 1 at 2.

*Matter of Yajure Hurtado* adopted the Government's broad § 1225(b)(2) theory within the agency. *Matter of Yajure Hurtado*, 29 I. & N. Dec. at 216, 228–29. But *Yajure Hurtado* does not bind this Court on statutory interpretation or constitutional questions. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2022). It is also the subject of active federal habeas litigation and a developing circuit split.

Persuasive district authority in the Ninth Circuit has rejected the Government's broad no-bond interpretation. In *Rodriguez Vazquez v. Bostock*, the Western District of Washington held that class members in the Tacoma bond-denial litigation were detained under § 1226(a), were not subject to mandatory detention under § 1225(b)(2), and could not be denied bond on that basis. 802 F. Supp. 3d 1297, 1325–36 (W.D. Wash. 2025), appeal docketed, No. 25-6842 (9th Cir.). The Central District of California likewise held that class members were detained under § 1226(a), not § 1225(b)(2), although later appellate stay activity limits the present operative effect of the nationwide relief entered in that case. See *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025).

Several courts of appeals have now rejected the Government's broad theory. The Second Circuit held that § 1226(a), not § 1225(b)(2)(A), governs detention of a noncitizen present in the United States after entering without inspection and not apprehended at or near the border. *Barbosa da Cunha v. Freden*, No. 25-3141-pr, 2026 WL 1146044, at *1 (2d Cir. Apr. 28, 2026). The Sixth Circuit affirmed grants of habeas relief where district courts concluded that long-present interior detainees were not lawfully detained under § 1225(b)(2)(A) and that detention without bond violated due process. *Lopez-Campos v. Raycraft*, Nos. 25-1965, 25-1969, 25-1978 & 25-1982, 2026 WL 1283891, at *13 (6th Cir. May 11, 2026). The Eleventh Circuit likewise rejected the Government's mandatory-detention position and affirmed that § 1226 governed the

petitioners' detention. *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, Nos. 25-14065 & 25-14075, 2026 WL 1243395 (11th Cir. May 6, 2026).

The Fifth and Eighth Circuits have gone the other way. See *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502–08 (5th Cir. 2026); *Herrera Avila v. Bondi*, 170 F.4th 1128, 1133–38 (8th Cir. 2026). Those decisions are not controlling here. Nonetheless, a large number of district courts in the Ninth Circuit have taken the opposite position.

At minimum, the statutory question is disputed and ambiguous as applied to a long-resident, interior-arrested respondent whose removal proceedings have been reopened. The canon of constitutional avoidance requires the Court to reject a reading that would authorize categorical civil detention without individualized custody review where a fair alternative reading exists. *Zadvydas*, 533 U.S. at 689.

## VI. CONTINUED DETENTION WITHOUT A MEANINGFUL CUSTODY HEARING VIOLATES DUE PROCESS

The Due Process Clause applies to all persons within the United States, including noncitizens. *Zadvydas*, 533 U.S. at 693; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). Freedom from physical restraint is at the core of the liberty protected by due process. *Zadvydas*, 533 U.S. at 690.

Civil detention must be justified by a legitimate nonpunitive purpose and must bear a reasonable relation to that purpose. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *Zadvydas*, 533 U.S. at 690. In immigration detention, the relevant purposes are ensuring appearance and protecting the community. *Zadvydas*, 533 U.S. at 690–91; *Demore v. Kim*, 538 U.S. 510, 527–28 (2003).

Due process requires procedures adequate to ensure that the Government's asserted justification for confinement outweighs the individual's protected liberty interest. *Singh v. Holder*, 638 F.3d 1196, 1203–04 (9th Cir. 2011); *Hernandez*, 872 F.3d at 990. In the § 1226(a) bond context, the decisionmaker must consider ability to pay and alternative conditions of release. *Hernandez*, 872 F.3d at 990–91, 1000.

Petitioner has strong equities directly relevant to custody. She has lived in Alaska for approximately twenty years. She has five United States citizen children. She has no criminal history known to counsel from the record reviewed to date. Her removal case has been reopened. She is represented by counsel. These facts matter to danger, flight risk, family support, ability to comply with supervision, and alternatives to detention. Dkt. 1 at 2, 4; Dkt. 1-1 at 1; Dkt. 1-2 at 1.

Yet Petitioner has not, and will not, receive a hearing at which a neutral adjudicator with authority to order release may consider those facts. Given the bond-history of the NW detention center in Tacoma, she is unlikely to receive a fair hearing since the courts are following the position followed in *Yajure-Hurtado*. A no-bond classification prevents individualized custody review and converts detention into a categorical rule. As applied to Petitioner, that violates due process.

Petitioner requests that the Court order a meaningful § 1226(a) hearing. At minimum, the Immigration Judge should consider danger, flight risk, ability to pay, alternatives to detention, and reasonable conditions of supervision. To the extent the Court finds Petitioner's detention sufficiently prolonged or otherwise *constitutionally deficient*, the Government should bear the burden of justifying continued detention by clear and convincing evidence. *See Singh*, 638 F.3d at 1203–04.

## VII.   REMEDY

The proper remedy is narrow and practical. The Court should order Respondents to provide Petitioner a custody redetermination hearing under 8 U.S.C. § 1226(a) within seven days. Dkt. 20 at 1–2.

The hearing should be conducted before an Immigration Judge with authority to order release on bond or conditional parole. The Immigration Judge should not be permitted to deny jurisdiction based on § 1225(b), *Yajure Hurtado*, or any equivalent categorical no-bond theory.

The hearing should be meaningful. Petitioner should be permitted to present evidence and argument regarding danger, flight risk, family and community ties, ability to pay, alternatives to detention, and appropriate conditions of supervision. The hearing should be recorded. If Respondents do not provide the ordered hearing within the time set by the Court, Petitioner should be released under reasonable conditions of supervision. Dkt. 20 at 1–2.

### VIII.  CONCLUSION

Petitioner remains detained after the Immigration Court reopened her removal proceedings. She is no longer detained under an executable final order of removal. She is detained pending a decision on removal and is entitled to custody process under 8 U.S.C. § 1226(a). Dkt. 20 at 1–2.

For these reasons, the Court should grant leave to supplement, deem the Supplemental Petition filed, and order Respondents to provide a prompt § 1226(a) custody hearing or release Petitioner under reasonable conditions of supervision if such a hearing is not undertaken.

DATED: June 22, 2026.

RESPECTFULLY SUBMITTED by:

*/s/ Nicolas A. Olano*

NICOLÁS A. OLANO (Alaska Bar No. 2105042)
NATIONS LAW GROUP
2525 Blueberry Road, Suite 207
Anchorage, Alaska 99503
Tel: (907) 770-0909 / Fax: (907) 770-0902
Email: nicolas@nationslawak.com
Attorney for Petitioner

**CERTIFICATE OF SERVICE**

I certify that on June 22, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

DATED: June 22, 2026.

*/s/ Nicolas A. Olano*

NICOLÁS A. OLANO (Alaska Bar No. 2105042)
NATIONS LAW GROUP
2525 Blueberry Road, Suite 207
Anchorage, Alaska 99503
Tel: (907) 770-0909 / Fax: (907) 770-0902
Email: nicolas@nationslawak.com
Attorney for Petitioner