MICHAEL J. HEYMAN
United States Attorney

JOSHUA A. TRAINI
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
Email: Josh.Traini@usdoj.gov

Attorneys for Respondents

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| FABIOLA PILLE-VALERIO,<br><br>                   Petitioner,<br><br>    v.<br><br>BRANDON JONES, SUPERINTENDENT, HILAND MOUNTAIN CORRECTIONAL FACILITY;<br><br>LAURA HERMOSSILO, FIELD OFFICE DIRECTOR, SEATTLE FIELD OFFICE, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT;<br><br>TODD LYONS, ACTING DIRECTOR, UNITED STATES IMMIGRATIONS AND CUSTOMS ENFORCEMENT;<br><br>MARKWAYNE MULLIN, SECRETARY OF U.S. DEPARTMENT OF HOMELAND SECURITY;<br><br>TODD BLANCHE, ACTING UNITED STATES ATTORNEY GENERAL,<br><br>                  Respondents. | Case No. 3:26-cv-00194-SLG |

## FEDERAL RESPONDENTS' RETURN ON ORDER TO SHOW CAUSE

Federal Respondents, Laura Hermosillo, Todd Lyons, United States Immigration and Customs Enforcement (ICE), Markwayne Mullin, and Todd Blanche, through undersigned counsel, hereby respond to the order to show cause as to why the Amended Petition for Writ of Habeas Corpus should not be granted.

## INTRODUCTION

Petitioner has filed a habeas petition under 28 U.S.C. § 2241. Petitioner is currently in removal proceedings under 8 U.S.C. § 1229a and is charged with inadmissibility as an alien present in the United States who has not been admitted or paroled. Accordingly, Petitioner is mandatorily detained in Immigration and Customs Enforcement (ICE) custody pursuant to 8 U.S.C. § 1225(b)(2)(A).

Before 1996, federal immigration laws required detention of aliens who presented at a port of entry, but they allowed those who had unlawfully entered and were already present in the United States to be released on bond pending deportation proceedings. Congress overhauled the immigration system in 1996 with the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), which sought to end preferential treatment of aliens who evade inspection and enter the United States unlawfully.

As relevant here, Congress enacted what is now codified at 8 U.S.C. § 1225. It "deem[s]" any "alien present in the United States who has not been admitted or who arrives in the United States" to be "an applicant for admission." 8 U.S.C. § 1225(a)(1). And it

mandates detention of any "applicant for admission" who cannot show that they are "clearly and beyond a doubt entitled to be admitted." *Id*. § 1225(b)(2)(A). There is no exception for aliens who are not apprehended upon arrival. There is no exception for aliens who make it to the interior of the country. And there is no exception for aliens who have been present in the United States for years. Although the Government previously applied the statute differently, the Court must enforce the language of § 1225(b)(2)(A) as written.

On September 5, 2025, the Board of Immigration Appeals (BIA) ruled on this issue in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). After detailed analysis, the BIA determined that based on the plain language of section 235(b)(2)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1225(b)(2)(A), Immigration Judges lack authority to hear bond requests or to grant bond to noncitizens who are present in the United States without admission.

The issue currently before the Court is whether Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A) or as she suggests, 8 U.S.C. § 1226(a). The legal dispute at issue is subject to a circuit-split and is currently in front of the Ninth Circuit for consideration. *See Rodriguez Vazquez v. Bostock*, No. 25-6842 (9th Cir.). The amended petition turns upon this legal dispute—it is the Government's understanding that the facts are relatively undisputed.

To date, two Circuit Courts of Appeals have arrived at the Government's conclusion. *See Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Buenrostro-Mendez v.*

*Bondi*, 166 F.4th 494 (5th Cir. 2026).  In contrast, other Circuit Courts of Appeals have come to a different conclusion. *See, e.g., Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828 (7th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026)[1].

In this case, the Court should conclude Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A) and decline to order a bond hearing. In the alternative, the Court should hold the matter in abeyance pending the outcome of *Rodriguez Vazquez v. Bostock*.

## STATUTORY BACKGROUND

**A. The Pre-IIRIRA Framework gave preferential treatment to aliens who unlawfully entered and remained in the United States.**

The Immigration and Nationality Act ("INA"), as amended, contains a comprehensive framework governing the regulation of aliens, including the creation of removal proceedings for aliens who unlawfully enter the United States or are otherwise removable from the country. It also creates requirements for when the Executive must detain aliens pending removal. Prior to 1996, the INA treated aliens differently based on whether they had presented at a port of entry or evaded inspection and entered the United States illegally. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 222-24 (BIA 2025) (citing

---

[1] This matter was petitioned for a writ of Certiorari to the United States Supreme Court on June 24, 2026.

8 U.S.C. §§ 1225(a), 1251 (1994)); *see Hing Sum v. Holder*, 602 F.3d 1092, 1099-1100 (9th Cir. 2010) (same). "Entry" referred to "any coming of an alien into the United States." 8 U.S.C. § 1101(a)(13) (1994). And whether an alien had physically entered the United States (or not) "dictated what type of [immigration] proceeding applied," *Hing Sum*, 602 F.3d at 1099, and whether the alien would be detained pending those proceedings, *Hurtado*, 29 I. & N. Dec. at 222-23.[2]

At the time, the INA "provided for two types of removal proceedings: deportation hearings and exclusion hearings." *Hose v. I.N.S.*, 180 F.3d 992, 994 (9th Cir. 1999) (en banc). An alien who arrived at a port of entry would be placed in "exclusion proceedings and subject to mandatory detention, with potential release solely by means of a grant of parole." *Hurtado*, 29 I. & N. Dec. at 223; *see* 8 U.S.C. §§ 1225(a)-(b) (1995), 1226(a) (1995). In contrast, an alien who evaded inspection and physically entered the United States unlawfully would be placed in deportation proceedings. *Hurtado*, 29 I. & N. Dec. at 223; *Hing Sum*, 602 F.3d at 1100. Aliens in deportation proceedings, unlike those in exclusion proceedings, "were entitled to request release on bond." *Hurtado*, 29 I. & N. Dec. at 223 (citing 8 U.S.C. § 1252(a)(1) (1994)). Thus, the INA's prior framework distinguishing between aliens based on "entry" had the

---

[2] Aliens who arrive at a port of entry have physically "entered" the United States, but under the longstanding "entry fiction" doctrine, "aliens who arrive at ports of entry … are 'treated' for due process purposes as if stopped at the border." *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020).

> 'unintended and undesirable consequence' of having created a statutory scheme where aliens who entered without inspection 'could take advantage of the greater procedural and substantive rights afforded in deportation proceedings,' including the right to request release on bond, while aliens who had 'actually presented themselves to authorities for inspection'…were subject to mandatory custody.

Hurtado, 29 I. & N. Dec. at 223 (emphasis added) (quoting *Martinez v. Att'y General of U.S.*, 693 F.3d 408, 413 n.5 (2012)); *see Hing Sum*, 602 F.3d at 1100 (similar); H.R. Rep. No. 104-469, pt. 1, at 225 (1996) ("House Rep.") ("illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection").

### B. IIRIRA eliminated the preferential treatment of aliens who unlawfully entered the United States and mandated detention of "Applicants for Admission"

Congress took corrective action by enacting IIRIRA, Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996). Among other things, IIRIRA "ensures that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in removal proceedings under the INA." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc).

To that end, IIRIRA replaced the prior focus on physical "entry" and instead made lawful "admission" the touchstone. IIRIRA defined "admission" as "the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). In other words, immigration laws no longer distinguish aliens based on whether they manage to evade detection and enter the country

*Pille-Valerio v. Jones et al.*                                          Page 6 of 33
Case No. 3:26-cv-00194-SLG

without permission. Instead, the "pivotal factor in determining an alien's status" is "whether or not the alien has been *lawfully* admitted." House Rep., *supra*, at 225 (emphasis added); *see Hing Sum*, 602 F.3d at 1100 (similar). IIRIRA also eliminated the exclusion/deportation dichotomy and consolidated both sets of proceedings into "removal proceedings." *Hurtado*, 29 I. & N. Dec. at 223.

IIRIRA effected these changes through several provisions codified in § 1225 of Title 8.

**Section 1225(a):** Section 1225(a) codifies Congress's decision to make lawful "admission," rather than physical entry, the touchstone. That provision states that an alien "present in the United States who has not been admitted or who arrives in the United States" "shall be deemed … an applicant for admission":

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1). And all applicants for admission must be inspected by an immigration officer. Section 1225(a)(3) provides: "All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." *Id*. § 1225(a)(3). The inspection by the immigration officer is designed to determine whether the alien may be lawfully "admitted" to the country or, instead, must be processed for removal.

*Pille-Valerio v. Jones et al.* Page 7 of 33
Case No. 3:26-cv-00194-SLG

**Section 1225(b):** IIRIRA also provided for expedited removal and "Section 240" proceedings.[3] *See* 8 U.S.C. § 1225(b)(1)-(2). It also mandated that applicants for admission be detained pending those proceedings. Section 1225(b)(1) provides for so-called "expedited removal proceedings," *DHS v. Thuraissigiam*, 591 U.S. 103, 109-13 (2020), which apply to a subset of certain aliens—those who: (1) are "arriving in the United States," or (2) have "not been admitted or paroled into the United States" and have "not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(i)-(iii). The immigration officer shall "order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum … or a fear of persecution." *Id*. § 1225(b)(1)(A)(i). In that event, the alien "shall be detained pending a final determination of credible fear or persecution and, if found not to have such fear, until removed." *Id*. § 1225(b)(1)(B)(iii)(IV); *see also* 8 C.F.R. § 235.3(b)(4)(ii). Any alien found to have established a credible fear of persecution must similarly "be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). An alien processed for expedited removal who does not indicate an intent to apply for asylum

---

[3] Section 240 of the INA, "titled 'Removal proceedings,' requires that "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien.'" *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 489 (9th Cir. 2007) (en banc). Section 240 is codified at 8 U.S.C. § 1229a.

or a fear of persecution or who is determined not to have a credible fear is likewise detained until removed. *Id*. § 1225(b)(1)(A)(i), (B)(iii)(IV); *see* 8 C.F.R. § 235.3(b)(2)(iii).

Section 1225(b)(2) is a "catchall provision that applies to all applicants for admission not covered by [subsection (b)(1)]." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).[4] It requires that those aliens be detained pending § 240 removal proceedings:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title [§ 240].

8 U.S.C. § 1225(b)(2)(A) (emphasis added); *see* 8 C.F.R. § 235.3(b)(1)(ii) (mirroring § 1225(b)(2)'s detention mandate); *Jennings*, 583 U.S. at 302 (holding that § 1225(b)(2) "mandate[s] detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin").

Although § 1225(b)(2) does not itself allow release, DHS may exercise its parole authority to temporarily release an applicant for admission, but "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). But parole "shall not be regarded as an admission of the alien." *Id*.; *Jennings*, 583 U.S. at 288 (discussing parole authority). And when DHS determines that

---

[4] Section 1225(b)(2)(A) also does not apply to (1) crewmen or (2) stowaways. 8 U.S.C. § 1225(b)(2)(B). In addition, the Executive has discretion to return aliens who have arrived on land from a contiguous territory to that territory pending § 240 removal proceedings. *Id*. § 1225(b)(2)(C).

*Pille-Valerio v. Jones et al.*                                                      Page 9 of 33
Case No. 3:26-cv-00194-SLG

"the purposes of such parole … have been served," the "alien shall … be returned to the custody from which he was paroled" and be "dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

**Section 1226:** IIRIRA also created a separate authority addressing the arrest, detention, and release of aliens generally (not "applicants for admission" specifically). *See* 8 U.S.C. § 1226. This provision governs the detention of aliens who have been admitted but later become removable—for example, admitted aliens who overstay their visas, engage in conduct that renders them removable, or are later determined to have been improperly admitted.

The statute provides that "[o]n a warrant issued by the Attorney General; an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Detention under this provision is generally discretionary. The Attorney General "may" either "continue to detain the arrested alien" or release the alien on bond or conditional parole. *Id*. § 1226(a)(1)-(2).[5] DHS makes the initial custody determination. 8 C.F.R. § 236.1(d)(1). The alien may then seek a custody redetermination (*i.e.*, a bond hearing) before an immigration judge and can appeal the

---

[5] Conditional parole under Section 1226(a) is "legally distinct from release on" parole under Section 1182(d)(5)(A). *Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 749 (BIA 2023) (following *Matter of Castillo-Padilla*, 25 I. & N. Dec. 257, 258 (BIA 2010) (holding that conditional parole under Section 1226(a) and parole under Section 1182(d)(5) are "distinct and different procedure[s]")); s*ee Ortega-Cervantes v. Gonzalez*, 501 F.3d 1111, 1116 (9th Cir. 2007).

judge's decision to the Board of Immigration Appeals ("Board"). 8 C.F.R. §§ 236.1(c)(8), (d), 1236.1(d)(1), 1003.19.

That "default rule" of discretionary detention does not apply to certain aliens who have committed criminal acts or been convicted of certain crimes or raise national security concerns. *Jennings*, 583 U.S. at 288. Section 1226(c) provides that "[t]he Attorney General shall take into custody" certain classes of criminal aliens—those who are inadmissible or deportable because the alien: (1) "committed" certain offenses delineated in 8 U.S.C. §§ 1182 and 1227; or (2) engaged in terrorism-related activities. 8 U.S.C. § 1226(c)(1); *see Nielsen v. Preap*, 586 U.S. 392, 398-99 (2019). The Executive must detain these aliens after "the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c)(1). Such aliens may be released only if DHS determines "that release of the alien from custody is necessary" to protect a witness to a "major criminal activity" or a similar person, and then only if the alien "will not pose a danger" to public safety and is not a flight risk. *Id*. § 1226(c)(4).

In January 2025, Congress amended § 1226(c) through the Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3 (2025). It requires detention of aliens who: (1) are inadmissible because they are physically present in the United States without admission or parole (8 U.S.C. § 1182(a)(6)(A)), have committed a material misrepresentation or fraud, (*id*. § 1182(a)(6)(C)), or lack required documentation, (*id*. § 1182(a)(7)); and (2) are

*Pille-Valerio v. Jones et al.* Case No. 3:26-cv-00194-SLG

"charged with, [] arrested for, [] convicted of, admit[] having committed, or admit[] committing acts which constitute the essential elements of" certain listed offenses. *Id*. § 1226(c)(1)(E).

### C. The Government applies § 1225(b)(2)(A) to require detention of all applicants for admission.

For many years after IIRIRA, DHS and most immigration judges treated aliens who illegally entered the United States without admission as being subject to discretionary detention under 8 U.S.C. § 1226(a). *Hurtado*, 29 I. & N. Dec. at 225 n.6. Until 2025, however, the Board had not issued any precedential opinion on the appropriate detention authority for such individuals.

The Board also adopted this interpretation in *Hurtado*. The Board concluded that § 1225(b)(2)'s mandatory detention regime applies to *all* aliens who entered the United States without inspection and admission:

> Aliens … who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer. Remaining in the United State for a lengthy period of time following entry without inspection, by itself, does not constitute an 'admission.'

29 I. & N. Dec. at 228. Thus, under Board precedent, immigration judges "lack authority to hear bond requests or to grant bond to aliens … who are present in the United States without admission." *Id*. at 225.

## FACTUAL BACKGROUND

Petitioner has attempted or entered the United States illegally on three separate occasions. First, on July 8, 2001, she attempted to illegally enter the United States without inspect near Calexico, California. Dkt 12-1. She was apprehended and processed as a voluntary return. *Id*. Two days later, she again attempted to enter illegally and was apprehended and processed as a voluntary return. *Id*. Undeterred, she apparently entered a third time and was encountered in Anchorage, Alaska on November 12, 2003. *Id*. She admitted to paying $1,500 to a smuggler to assist with her illegal entry. *Id*. Petitioner possessed fraudulent social security and resident alien cards issued in her name, despite pursuing unlawful entry into the United States. *Id*. During this encounter, she reported that she had entered the United States without inspection at San Ysidro, California on approximately August 1, 2001. Dkt. 11-1.

## ARGUMENT

### I. Section 1225(b)(2) mandates detention of aliens who are present in the United States without having been admitted.

Petitioner's claims for alleged statutory and constitutional violations fail because Petitioner is subject to mandatory detention under 8 U.S.C. § 1225.

The plain language of § 1225(b)(2) requires detention of all aliens who are present in the United States without admission and are subject to removal proceedings—regardless of how long the alien has been in the United States or how far from the border they ventured. That unambiguous language resolves this case. *See Little Sisters of the Poor*

*Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 676 (2020) ("Our analysis begins and ends with the text."). A contrary reading is incompatible with the clear statutory text and subverts Congress's manifest purposes in adopting § 1225(b)(2)(A).

**II.    The plain language of § 1225(b)(2) mandates detention of applicants for admission.**

Under § 1225(a)(1), an "alien present in the United States who has not been admitted…shall be deemed…an applicant for admission." 8 U.S.C. § 1225(a)(1). "Admission" under the INA means not just physical entry, but "lawful entry…after inspection" by immigration authorities. 8 U.S.C. § 1101(a)(13)(A). An alien who enters the country without inspection remains an applicant for admission, regardless of the duration of the alien's presence in the United States or the alien's distance from the border. A recent decision from the Supreme Court confirms this understanding, stating, "An alien is deemed an 'applicant for admission' if he 'arrives in the United States.'" *Mullin v. Al Otro Lado*, No. 25-5, 2026 WL 1825741, at *3 (U.S. June 25, 2026). This decision alone should foreclose any arguments to the contrary.

Section 1225(b)(2) further provides that "an alien who is an applicant for admission" "shall be detained" pending removal proceedings if the "alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). The use of the term "shall" denotes that detention is mandatory. *See Jennings*, 583 U.S. at 302. And like subsection (a), subsection (b)(2) makes no exception for the duration of the alien's presence in the country or how far the alien's incursion into

*Pille-Valerio v. Jones et al.*                                                     Page 14 of 33
Case No. 3:26-cv-00194-SLG

the country. *See Altamirano Ramos v. Lyons*, —F. Supp. 3d—, 2025 WL 3199872, at *4 (C.D. Cal. Nov. 12, 2025) ("[T]he statute does not limit the applicability . . . to aliens who have been present in the United States for only some limited period of time, or aliens who were apprehended in the United States within a certain distance from the border."). Aside from those aliens expressly exempted, the plain text mandates that DHS detain all "applicants for admission" who are not "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A).

Petitioner falls squarely within the plain text of § 1225. There is no dispute she has "not been admitted." Dkt. 12-1; 8 U.S.C. § 1225(a), (b)(2)(B). She cannot—and did not—establish she is "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Therefore, she "shall be detained" for a removal proceeding. *Id*.; *see Altamirano Ramos v. Lyons*, 2025 WL 3199872, at *4; *Xiaoquan Chen v. Almodovar*, No. 1:25-cv-8350, 2025 WL 3484855 (S.D.N.Y. Dec. 4, 2025); *Candido v. Bondi*, No. 25-cv-867, 2025 WL 3484932 (W.D.N.Y. Dec. 4, 2025); *Topal v. Bondi*, No. 1:25-cv-01612, 2025 WL 3486894 (W.D. La. Dec. 3, 2025); *Mejia Olalde v. Noem*, No. 1:25- cv-168, 2025 WL 3131942, at *2–3 (E.D. Mo. Nov. 10, 2025); *Sandoval v. Acuna*, No. 6:25-cv-01467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025); *Rojas v. Olson*, No. 25-cv-1437, 2025 WL 3033967, at *6 (E.D. Wis. Oct. 30, 2025).

### III. The phrase "seeking admission" does not narrow the scope of § 1225(b)(2)(A).

The statute itself makes clear that an alien who is an "applicant for admission" *is* "seeking admission." Section 1225(a) provides that "[a]ll aliens…who are applicants for admission *or otherwise* seeking admission or readmission…shall be inspected." 8 U.S.C. § 1225(a)(3) (emphasis added). The word "'[o]therwise' means 'in a different way or manner[.]'" *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 535 (2015) (quoting Webster's Third New International Dictionary 1598 (1971)); *see also Att'y Gen. of United States v. Wynn*, 104 F.4th 348, 354 (D.C. Cir. 2024) (same); *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 963-64 (11th Cir. 2016) (en banc) ("or otherwise" means "the first action is a subset of the second action"). As the Seventh Circuit recognized: "'[O]r otherwise' language 'operates as a catchall: the specific items that precede it are meant to be subsumed by what comes after the 'or otherwise'" clause. *Kleber v. CareFusion Corp.*, 914 F.3d 480, 482-83 (7th Cir. 2019). Being an "applicant for admission" is thus a particular "way or manner" of seeking admission, such that any alien who is an "applicant for admission" *is* "seeking admission" for purposes of § 1252(b)(2)(A).

"Seeking admission" thus includes not only aliens who "entered the United States with visas or other entry documents before their presence became lawful," but also aliens who "entered unlawfully or [were] paroled into the United States but were deemed constructive applicants for admission by operation of section 235(a)(1) of the Act." *Matter*

*of Lemus- Losa*, 25 I & N. Dec. 734, 743 n.6 (BIA 2012) (emphases omitted). As a result, "many people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be 'seeking admission' under the immigration laws." *Id.* at 743 (emphasis in original). For example, an alien who previously unlawfully entered the United States and is never admitted, departs, and subsequently submits a literal application for admission to the United States—*e.g.*, obtaining the proper travel documents, such as a visa, and presenting at a port of entry for inspection—is deemed to be "*again* seek[ing] admission" to the United States. *Id*. at 743-44 & n.6 (emphasis added) (quoting and discussing 8 U.S.C. § 1182(a)(9)(B)(i)(I)-(II)). Mere presence without admission *is* seeking admission "by operation of law." *Id*.

The everyday meaning of the statutory terms also supports this reading. One may "seek" something without "applying" for it—for example, one who is "seeking" happiness is not "applying" for it. But one *applying* for something is necessarily *seeking* it. *Compare* Webster's New World College Dictionary 69 (4th ed.) ("apply" means "[t]o make a formal request (*to* someone *for* something)"), *with id*. at 1299 ("seek" means "to request, ask for"); *accord Mejia Olalde*, 2025 WL 3131942, at *3 ("To 'seek' is a synonym of to 'apply' for."). For example, a person who is "applying" for admission to a college or club is "seeking" admission to the college or club. *See* The American Heritage Dictionary of the English Language 63 (1980) ("American Heritage Dictionary") ("apply" means "[t]o request or *seek* employment, acceptance, or *admission*") (emphasis added). Likewise, an

alien who is "applying" for admission to the United States (*i.e.*, an "applicant for admission") is necessarily "seeking admission" to the United States. *Rojas*, 2025 WL 3033967, at *8 ("seeking admission" is "best read as simply another way of referring to aliens who are applicants for admission").

All of this confirms that neither the duration of an alien's unlawful presence in the United States, nor the distance from the border when apprehended alters the legal reality that an "applicant for admission" is "seeking admission." "Congress knows how to limit the scope" of the INA "geographically and temporally when it wants to." *Mejia Olalde*, 2025 WL 3131942, at *4. For example, § 1225(b)(1) may apply to aliens "arriving in the United States" or who "ha[ve] been physically present in the United States continuously for [a] 2-year period." 8 U.S.C. § 1225(b)(1). So, if "Congress meant to say that an alien no longer is 'seeking admission' after some amount of time in the United States, Congress knew how to do so." *Mejia Olalde*, 2025 WL 3131942, at *4. It did not. To the contrary, § 1225(a)(1)'s inclusion of *both* aliens "arriving" and those "present in the United States" confirms that *all* aliens who are not admitted are "applicants for admission," regardless of the length of their presence in the country.

None of this is to say, however, that "seeking admission" has no meaning beyond "applicant for admission." As § 1225(a)(3) shows, being an "applicant for admission" is only *one* "way or manner" of "seeking admission," not the exclusive way. For example, lawful permanent residents returning to the United States may not be "applicants for

admission," but they still may be deemed to be "seeking admission" in some circumstances. *See* 8 U.S.C. § 1101(a)(13)(C). Stowaways, too, are not "applicants for admission" but are still subject to inspection for admissibility. *See* 8 U.S.C. §§ 1182(a)(6)(D); 1225(a)(2). Moreover, given the complexity of the statutory scheme and IIRIRA's changes, Congress's use of the phrase "or otherwise seeking admission" ensured that all aliens would be subject to § 1225(a)'s inspection requirement—including aliens who entered before IIRIRA's effective date.

To be sure, the Government previously operated under a different understanding of § 1225(b)(2)(A), such that aliens present in the United States who had entered without admission could be detained under § 1226(a). *But see* 8 C.F.R. § 235.3(b)(1)(ii) (requiring detention of applicants for admission pending removal proceedings "in accordance with section 235(b)(2) of the Act"). But past practice does not justify disregard of clear statutory language. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015). Indeed, the Supreme Court has rejected longstanding government interpretations that it has deemed incompatible with the INA specifically. *See Pereira v. Sessions*, 585 U.S. 198, 204-05, 208-09 (2018). Therefore, a court must always interpret the statute "as written." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019); *see Mejia Olalde*, 2025 WL 3131942, at *5 (rejecting the prior interpretation of § 1225(b)(2) as "nontextual" and unsupported by any "thorough, reasoned analysis"); *Rojas*, 2025 WL 3033967, at *9

("Prior administrations' generous interpretation of these laws… do not and cannot rewrite it.").

The Government's reading does not render the term "seeking admission" redundant of the phrase "applicant for admission" in § 1252(b)(2)(A). The structure of § 1252(b)(2)(A) demonstrates that each phrase has independent meaning. Section 1225(b)(2)(A) is composed of a primary (operative) clause, which is modified by two prefatory clauses offset by commas. The operative clause requires detention of aliens "seeking admission" who cannot show their admissibility ("if the examining immigration officer …, [then] the alien shall be detained"). That clause's mandate is modified by two prefatory clauses. The first excludes aliens covered by subparagraphs (B) and (C). 8 U.S.C. § 1225(b)(2)(A) ("[s]ubject to …"). Like the first, the second prefatory clause narrows the operative clause to a subset of "case[s]"—namely, "in the case of an alien who is an applicant for admission…." *Id*. (emphasis added). Section 1225(b)(2) thus lays out a general command (the operative clause), and then qualifies that directive: "[I]f an alien seeking admission is not clearly and beyond a doubt entitled to be admitted," then "the alien shall be detained"—but only if (1) the alien is not covered by subparagraphs (B) or (C); and (2) the alien is seeking admission by being "an applicant for admission" under § 1225(a)(1). No portion of the statute is redundant.

Even if it were otherwise, the canon against surplusage "is not a silver bullet." *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019). "Redundancies are common

in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication." *Barton*, 590 U.S. at 239. As the Supreme Court "has often recognized: Sometimes the better overall reading of a statute contains some redundancy." *Id*. (quoting *Rimini St., Inc.*, 586 U.S. at 346) (internal quotations omitted). For that reason, "the surplusage cannon … must be applied with statutory context in mind," *United States v. Bronstein*, 849 F.3d 1101, 1110 (D.C. Cir. 2017), and "redundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Barton*, 590 U.S. at 239; *see also Mullin v. Al Otro Lado*, No. 25-5, 2026 WL 1825741, at *8 (U.S. June 25, 2026) (rejecting a similar argument).

Those principles apply with full force here. Under a straightforward reading of the statute, an "applicant for admission" is "seeking admission." Even if that reading produced some redundancy in § 1225(b)(2)(A), that is "not a license to rewrite" § 1225 "contrary to its text." *Barton*, 590 U.S. at 239; *see Heyman v. Cooper*, 31 F.4th 1315, 1322 (11th Cir. 2022) ("Th[e] principle [that drafters do repeat themselves] carries extra weight where… the arguably redundant words that the drafters employed… are functional synonyms."). And that is especially true, where that re-writing would be so clearly contrary to Congress's objective in passing the law.

Even if "seeking admission" required some separate affirmative conduct by the alien, an applicant for admission who attempts to remain in the United States, rather than trying to voluntarily depart is "seeking admission."

Section 1225(b)(2)(A) applies to an alien who is present in the United States without admission, even for years, and is not concerned with the alien's pre-inspection conduct. Rather, the statute's use of present tense language ("seeking" and "determines") shows that its focus is a specific point in time—when "the examining immigration officer" is making a "determin[ation]" regarding the alien's admissibility. 8 U.S.C. § 1225(b)(2)(A). At *that* point, the alien is "seeking"—*i.e.*, presently "endeavor[ing] to obtain," admission into the United States. American Heritage Dictionary (available at https://www.ahdictionary.com/word/search.html?q=seeking, last accessed June 24, 2026). If it were otherwise, the applicant would "depart immediately from the United States" in lieu of removal proceedings. *See* 8 U.S.C. § 1225(a)(4). An applicant who forgoes that statutory option and instead endeavors to remain in the United States through contested removal proceedings, as is the case here, in which the alien has the "burden of establishing that [she] is clearly and beyond a doubt entitled to be admitted" or satisfies the criteria for "relief from removal," 8 U.S.C. § 1229a(c)(2)(A), (c)(4)—is plainly "endeavor[ing] to obtain" admission to the United States. American Heritage Dictionary, *supra*.

### IV. Section 1226 does not support the Petitioner's reading.

Although § 1226(c) and § 1225(b)(2) overlap for some aliens, each provision has independent effect. And any incidental overlap is no basis for re-writing unambiguous statutory text.

To begin, there is no colorable argument that the Government's interpretation of § 1225(b)(2)(A) renders § 1226(a)'s discretionary detention authority superfluous. It also provides the Government also "may release the alien" on bond or conditional parole. 8 U.S.C. § 1226(a). The provision provides authority to detain a large group of aliens who are not "applicants for admission" subject to § 1225(b)(2)(A), *see RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("the specific governs the general")—that is, aliens who have been admitted to the United States but are now deportable and subject to removal proceedings under § 1229a. For example, detention of aliens who have overstayed their visas is governed by § 1226(a), because those alien (unlike Petitioner) were admitted to the United States.

The Government's interpretation does not render § 1226(c) superfluous. Section 1226(c) is the exception to § 1226(a)'s discretionary detention regime. It forces the Executive to detain "any alien" who is deportable or inadmissible for having committed specified offenses or engaged in terrorism-related actions "when the alien is released" from the custody of another law enforcement entity. *See* 8 U.S.C. § 1226(c)(1)(A)-(E). Section

*Pille-Valerio v. Jones et al.*                                                    Page 23 of 33
Case No. 3:26-cv-00194-SLG

1226(c) and § 1225(b)(2) apply to significant groups of aliens not encompassed by the other.

Most obvious, § 1226(c)(1) requires the Executive to detain aliens who have been admitted to the United States and are now "deportable." *See* 8 U.S.C. § 1226(c)(1)(B). By contrast, § 1225(b)(2) has no application to admitted aliens. Moreover, § 1226(c)(1) requires detention of aliens who are "inadmissible" on certain grounds. *See* 8 U.S.C. § 1226(c)(1)(A), (D), (E). Here too, § 1226(c) sweeps more broadly than § 1225(b)(2), because the referenced grounds cover aliens who are inadmissible but were erroneously admitted. *See* 8 U.S.C. § 1227(a), (a)(1)(A) (providing for the removal of "[a]ny alien … in and admitted to the United States," including "[a]ny alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at the time…." (emphasis added)). Finally, as noted above, § 1225(b)(2)(A) does "not apply to an alien … who is a crewman" or "a stowaway," 8 U.S.C. § 1225(b)(2)(B)-(C), but § 1226(c) does apply to those aliens who are inadmissible or deportable on one of the specified grounds—aliens who are not members of the class.

Section 1226(c) also differs from § 1225(b)(2) in another crucial way—it narrows the circumstances under which aliens may be released from mandatory detention. Recall that for aliens subject to mandatory detention under § 1225(b)(2), IIRIRA allows the Executive to "temporarily" parole them "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(b)(5). Section 1226(c)(1) takes that

*Pille-Valerio v. Jones et al.*                                                Page 24 of 33
Case No. 3:26-cv-00194-SLG

option off the table if the alien has committed offenses or engaged in conduct specified in § 1226(c)(1)(A)-(E). As to those aliens, § 1226(c) authorizes their release only if "necessary to provide protection to" a witness or a similar person "and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(4).

The Government's reading also does not render "superfluous" the recent amendment of § 1226(c) through the Laken Riley Act. That law requires mandatory detention of certain criminal aliens who are "inadmissible" under 8 U.S.C. § 1182(a)(6)(A), (a)(6)(C), or (a)(7). *See* 8 U.S.C. § 1226(c)(E)(i)-(ii). Even then, the Laken Riley Act "may apply to situations where §1225 might not." *Mejia Olalde*, 2025 WL 3131942, at \*4 (citing 8 U.S.C. §1182(a)(6)(C)(i)). As with the other grounds of "inadmissibility" listed in § 1226(c), both (a)(6)(C) and (a)(7) may apply to inadmissible aliens who were admitted in error, as well as those never admitted. *See Mejia Olalde*, 2025 WL 3131942, at \*4 (E.D. Mo. Nov. 10, 2025) (noting that "the Laken Riley Act may apply to situations where § 1225 might not" (citing 8 U.S.C. § 1182(a)(6)(C)(i))). Again, § 1225(b)(2) has no application to aliens admitted in error.

To be sure, the Laken Riley Act's application to aliens who are inadmissible under §1182(a)(6)(A)—for being "present… without being admitted or paroled"—overlaps with § 1225(b)(2)(A). But again, "[r]edundancies are common in statutory drafting," and are "not a license to rewrite or eviscerate another portion of the statute contrary to its text."

*Pille-Valerio v. Jones et al.*                                   Page 25 of 33
Case No. 3:26-cv-00194-SLG

*Barton*, 590 U.S. at 239; *see Mejia Olalde*, 2025 WL 3131942, at *4 ("even assuming there were surplusage, that cannot trump the plain meaning of § 1225(b)(2)"). In any event, the canon against surplusage is "weak" when applied, as here, to "acts of Congress enacted at widely separated times." *Mejia Olalde*, 2025 WL 3131942, at *5; *see Rojas*, 2025 WL 3033967, at *9 ("legislation passed in 2025 has little bearing on the meaning of legislation enacted in 1996"). Thus, the fact that the Laken Riley Act amendments were passed "just months ago" *hurts*, rather than helps, the Petitioner's arguments. And the canon against surplusage is especially weak where, as here, there will be overlap under any possible reading of the statute. *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 106 (2011) ("[T]he canon against superfluity assists only where a competing interpretation gives effect to every clause and word of a statute") (internal quotation omitted). After all, this portion of the Laken Riley Act requires detention of "arriving aliens" and "applicants for admission" who are taking affirmative steps toward admission, as long as they meet the offense criteria, *see* 8 U.S.C. § 1226(c)(1)(E)(ii)—but Petitioner would likely agree that those aliens are subject to § 1225(b)(2)(A), too. Some redundancy is unavoidable.

In any event, § 1226(c) still does independent work—and therefore does not render the Laken Riley Act "entirely redundant," by preventing the Executive from releasing the specified aliens on parole. In fact, Congress's desire to further limit the parole power with respect to criminal aliens was one reason it enacted the Laken Riley Act. The Act was adopted in the wake of a heinous murder committed by an inadmissible alien who was

*Pille-Valerio v. Jones et al.*                                      Page 26 of 33
Case No. 3:26-cv-00194-SLG

"paroled into this country through a shocking abuse of that power," 171 Cong. Rec. at H278 (daily ed. Jan. 22, 2025) (Rep. McClintock), and an abdication of the Executive's "fundamental duty under the Constitution to defend its citizens," 171 Cong. Rec. at H269 (Rep. Roy). The Act thus reflects a "congressional effort to be doubly sure," *Barton*, 590 U.S. at 239, that unadmitted criminal aliens are not paroled into the country through an abuse of the narrow parole authority.

The fact that Congress may have legislated against the backdrop of an *incorrect* application of § 1225(b)(2)(A) does not justify judicially re-writing that provision to eliminate a redundancy in a later enactment. *Barton*, 590 U.S. at 239.

## V. Petitioner's statutory reading would subvert Congressional intent.

The Petitioner's reading is not only textually baseless, it also subverts IIRIRA's express goal of eliminating preferential treatment for aliens who enter the country unlawfully. *See King v. Burwell*, 576 U.S. 473, 492 (2015) (rejecting interpretation that would lead to result "that Congress designed the Act to avoid"); *New York State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 419-20 (1973) ("We cannot interpret federal statutes to negate their own stated purposes.").

## VI. The Supreme Court's decision in *Jennings* supports the Government's interpretation.

The Government's interpretation is consistent with the Supreme Court's decision in *Jennings*, 583 U.S. 281. In that case, the Court reviewed a decision that applied constitutional avoidance to "impos[e] an implicit 6-month time limit on an alien's

detention" under §§ 1225(b) and 1226. 583 U.S. at 292. The Court held that neither provision is so limited. *Id*. at 292, 296-306. In reaching that holding, the Court did not— and did not need to—resolve the precise groups of aliens subject to § 1225(b) or § 1226. Nonetheless, consistent with the Government's reading, the Court recognized in its description of § 1225(b) that "Section 1225(b)(2)…serves as a catchall provision that applies to all applicants for admission not covered by §1225(b)(1)." *Id*. at 287.

To be sure, *Jennings* described the detention authorities in §§ 1225(b) and 1226, and in that context summarized § 1226 as applying to aliens "already in the country":

> In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

583 U.S. at 289; *see also id*. at 288 (characterizing § 1226 as applying to aliens "once inside the United States"). But "[t]he language of an opinion is not always to be parsed [like the] language of a statute," and instead "must be read with a careful eye to context." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373-74 (2023) (quotation omitted). When describing the scope of § 1226 in particular, *Jennings* refers to aliens "present in the country" who are removable under 8 U.S.C. § 1227(a)—a provision that applies *only* to admitted aliens. *See* 583 U.S. at 288. The Government's interpretation is perfectly consistent with that understanding: it allows that § 1226 is the exclusive source of detention authority for the substantial category of aliens who are admitted into the United States but are now removable.

*Pille-Valerio v. Jones et al.*
Case No. 3:26-cv-00194-SLG

Page 28 of 33

Moreover, nothing in the quoted language from *Jennings* suggests that § 1226 is the *sole* detention authority for *every* "alien[] already in the country," and the passage's use of the word "certain" conveys the opposite. At a minimum, the quoted language is ambiguous and such uncertain dicta is insufficient to displace the statute's text and the manifest congressional purpose; that is especially so, as no part of the holding in *Jennings* required resolution of the precise scope of §§ 1225(b) and 1226.

### VII. Petitioner is not entitled to a bond hearing as she has limited Due Process rights.

Petitioner claims a substantive due process right to a bond hearing. Under the Fifth Amendment, "[n]o person" may "be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. Although the Supreme Court's cases leave no doubt that this protection extends to aliens in the "context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) (citation omitted). Its cases also leave no doubt that the protection applies in a *narrow* way in that context. *See Thuraissigiam*, 591 U.S. at 139-40; *Demore v. Kim*, 538 U.S. 510, 521–23 (2003); *Reno v. Flores*, 507 U.S. 292, 305-06 (1993). Certainly, Petitioner has no liberty interest or right to enter the United States or continue to reside in the country after entering. *See* Caleb Nelson, *Adjudication in the Political Branches*, 107 Colum. L. Rev. 559, 580–81 & nn.82–83 (2007) (citations omitted).

The Supreme Court has read that the Due Process Clause to gives aliens arriving at the border "only those rights" that Congress has seen fit to grant them as a statutory matter.

*Thuraissigiam*, 591 U.S. at 140. The Supreme Court has repeatedly held that the Due Process cause allows the Government to detain aliens, such as the Petitioner, *pending their removal proceedings*. *Denmore*, 538 U.S. at 527-28. For example, it has concluded that the Due Process Clause does not require bond hearings for aliens detained pursuant to § 1226(c). *Id*. at 523-31. It likewise held that due process did not require individual "best interest" hearings for detained juvenile immigrants to determine whether the Government should place them in a private setting during their removal proceedings. *See Reno v. Flores*, 507 U.S. 292, 302-06 (1993). It has also held due process does not require giving individualized dangerousness or flight-risk findings to detained communists aliens during their removal proceedings. *Carlson v. Landon*, 342 U.S. 524, 537-42 (1952); *Demore*, 538 U.S. at 523 n.7.

Detention during removal proceedings satisfies the deferential rational-basis test that applies. *Reno*, 507 U.S. at 303. It *categorically* "serves the purpose of preventing [removable immigrants] from fleeing prior to or during their removal proceedings, thus increasing the chance that" *all* "will be successfully removed." *Demore*, 538 U.S. at 528. Congress may make these types of overinclusive "categorical judgments" under rational-basis review. *Vidal v. Elster*, 602 U.S. 286, 319 (2024) (Barrett, J., concurring in the judgment).

To the extent Petitioner characterizes her substantive due process claim as procedural, she does not have a procedural right to prove facts at a bond hearing that the

*Pille-Valerio v. Jones et al.* Page 30 of 33
Case No. 3:26-cv-00194-SLG

law renders irrelevant to her detention. *See Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7-8 (2003).

### VIII. If the Court finds Petitioner detained pursuant to 8 U.S.C. § 1226(a), it should hold the matter in abeyance pending the outcome in the Ninth Circuit.

Respondents maintain that Petitioner is properly subject to mandatory detention under § 1225 and dismissal is proper. To the extent the Court finds this Petitioner subject to detention authority under 8 U.S.C. § 1226(a), Respondents' position is the Court should hold the matter in abeyance pending the Ninth Circuit's resolution of *Rodriguez Vazquez v. Bostock*. If the Court is disinclined to hold the matter in abeyance, the proper remedy would be directing a bond hearing under § 1226(a), to be held within fourteen (14) days. *See* 8 U.S.C. § 1226(e) ("No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."); *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) ("As we have previously explained, § 1226(e) precludes an alien from 'challeng[ing] a "discretionary judgment" by the Attorney General or a "decision" that the Attorney General has made regarding his detention or release.' But § 1226(e) does not preclude 'challenges [to] the statutory framework that permits [the alien's] detention without bail.'"); 8 U.S.C. § 1226(b) ("The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien.").

**CONCLUSION**

Congress intended aliens such as Petitioner who have entered the United States illegally (Petitioner has done so on at least three occasions, Dkt. 12-1), but evaded detection to be treated the same as aliens apprehended at the border and enacted IIRIRA. The entire statutory scheme of Sections 1225 and 1226 contemplate this result. A decision from the Supreme Court issued yesterday confirms the basic understanding that an alien is deemed an applicant for admission if present in the United States. This Court must conclude the same.

RESPECTFULLY SUBMITTED this June 26, 2026, in Anchorage, Alaska.

MICHAEL J. HEYMAN
United States Attorney

/s/ Joshua A. Traini
Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**
I hereby certify that on June 26, 2026,
a true and correct copy of the foregoing
was served electronically on the following:

Daniel Poulson
Aadika Singh
Assistant Federal Defenders
Federal Public Defenders for the District of Alaska
188 W. Northern Lights Blvd. Suite 700
Anchorage, AK 99503
Email:  daniel_poulson@fd.org
            aadika_singh@fd.org

*Pille-Valerio v. Jones et al.*                                              Page 32 of 33
Case No. 3:26-cv-00194-SLG

Nicolas A. Olano
Nations Law Group
2525 Blueberry Road, Suite 207
Anchorage, Alaska 99503
Email: nicolas@nationslawak.com
*Attorneys for Petitioner*

Andalyn Pace
Assistant Attorney General
Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Email: andalyn.pace@alaska.gov
*Attorney for Respondent Brandon Jones*

/s/ Joshua A. Traini
Office of the U.S. Attorney