Nicolas A. Olano
Alaska Bar No. 2105042
Florida Bar No. 0528961
NATIONS LAW GROUP
2525 Blueberry Road, Suite 207
Anchorage, Alaska 99503
Tel: (907) 770-0909
Fax: (907) 770-0902
Email: nicolas@nationslawak.com
Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| Faviola PILLE-VALERIO<br><br>       Petitioner,<br><br>  v.<br><br>Brandon JONES, et al.,<br><br>       Respondents. | Case No. 3:26-cv-00194-SLG<br><br><br>**PETITIONER'S TRAVERSE AND REPLY TO ORDER TO SHOW CAUSE[1]** |

**COMES NOW**, Petitioner Fabiola Pille-Valerio, through undersigned counsel, hereby submits this Traverse in response to Federal Respondents' Return on the Order to Show Cause and in support of granting the Amended Petition for Writ of Habeas Corpus.

## I.   INTRODUCTION

The traverse addresses one legal custody question: whether Petitioner's present detention in reopened INA § 240 removal proceedings, 8 U.S.C. § 1229a, is governed by INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A), or by INA § 236(a), 8 U.S.C. § 1226(a). Respondents answer that question by starting with § 1225(a)(1)'s deemed "applicant for

---

[1] Because Respondent's response to the Order to Show Cause is essentially the same as their Habeas Return, this paper is also presented as a reply to the arguments brought forth in that response.

TRAVERSE AND REPLY TO OSC – 1 of 21      Pille-Valerio v. Jones
Case No. 3:26-cv-00194-SLG

admission" label. That is the wrong starting point. The Court must first construe the operative custody provisions.

The traverse proceeds in that order. It first corrects Respondents' use of IIRIRA history: Congress changed the classification and burden framework in removal proceedings; it did not silently create a universal no-bond custody rule for all interior EWI respondents. It then turns to the text and structure of § 1225(b)(2)(A), which requires more than applicant-for-admission status and operates within the inspection-and-admission process. From there, it explains why Petitioner's current posture—interior detention while reopened § 240 proceedings are pending—falls under § 1226(a).

The traverse also addresses the record and Respondents' authorities. Respondents' own custody exhibit shows that Petitioner was historically released on recognizance under INA § 236, 8 U.S.C. § 1226, not paroled under § 212(d)(5)(A). That record contradicts Respondents' present parole-only § 235 theory. Their reliance on *Yajure Hurtado*, and adverse out-of-circuit decisions does not cure the statutory problem because none supplies compelling authority requiring § 1225(b)(2)(A) custody in Petitioner's present posture.

The relief requested here is narrow: a ruling that § 1226(a) supplies the governing custody authority, denial of abeyance, and a prompt custody redetermination hearing before an Immigration Judge with authority to consider release where the burden is on the respondents to show petitioner is a flight risk or a danger to the community.

### a. CORRECT HISTORICAL BACKGROUND REGARDING THE CHANGES IMPLEMENTED BY IIRIRA

Respondents' return begins from the wrong historical proposition. IIRIRA changed how non-citizens are classified in removal proceedings; it did not turn INA § 235, 8 U.S.C. § 1225, into a general no-bond detention statute for interior arrests. A person may be treated as an applicant for admission for charge-and-burden purposes in INA § 240, 8 U.S.C. § 1229a proceedings without being in present admission-processing custody under § 1225(b)(2)(A).

TRAVERSE AND REPLY TO OSC – 2 of 21        Pille-Valerio v. Jones

Before IIRIRA, procedure turned on "entry." A person stopped at the border generally was placed in exclusion proceedings; a person who had effected entry, including a person who entered without inspection and was later found in the interior, generally was placed in deportation proceedings. See *Hing Sum v. Holder*, 602 F.3d 1092, 1099–1100 (9th Cir. 2010). IIRIRA replaced that dual system with one removal proceeding for deciding inadmissibility or deportability. 8 U.S.C. § 1229a(a)(1); *Vartelas v. Holder*, 566 U.S. 257, 262–63 (2012).

That procedural change carried burden consequences. In deportation proceedings, the Government bore the burden to prove deportability by clear, unequivocal, and convincing evidence. *Woodby v. INS*, 385 U.S. 276, 286 (1966). In exclusion proceedings, the applicant for admission generally bore the burden to establish admissibility. *Landon v. Plasencia*, 459 U.S. 21, 35 n.9 (1982). The House Report Respondents cite addressed that procedural disparity. H.R. Rep. No. 104-469, pt. 1, at 225 (1996). It did not address physical custody, bond eligibility, or detention mechanics.

The same legislative history confirms the distinction. When the House Report addressed interior arrest and detention, it did so separately under revised INA § 236, 8 U.S.C. § 1226, explaining that INA § 236(a), 8 U.S.C. § 1226(a) "restates" prior authority to "arrest, detain, and release on bond an alien who is not lawfully in the United States." Id. at 229. Respondents therefore ask a classification passage on page 225 to override the custody discussion on page 229. Read in sequence and by subject matter, IIRIRA changed the charge-and-burden framework; it did not silently create mandatory no-bond detention under INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A) for individuals who had entered without inspection and find themselves geographically and temporally removed from a "seeking admission" at the border.

The INA's definition of "admission" reinforces the point. "Admission" and "admitted" mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Inspection and authorization are operative acts tied to the admission process—arrival, presentation for

TRAVERSE AND REPLY TO OSC – 3 of 21        Pille-Valerio v. Jones

inspection, pre-inspection, deferred inspection, authorization, parole, or referral from that process.

Section 235 reflects that architecture. It is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225. The examination regulation places an application to lawfully enter at a United States port of entry when open for inspection, or through a designated inspection mechanism tied to admission. 8 C.F.R. § 235.1(a). Section 235 therefore channels persons from inspection and admission processing into INA § 240, 8 U.S.C. § 1229a proceedings when appropriate. It is not the general custody mechanism for persons already in the interior.

The contemporaneous implementation of IIRIRA says the same thing. In 1997, INS and EOIR stated that, "[d]espite being applicants for admission," persons "present without having been admitted or paroled," formerly described as persons who entered without inspection, "will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997). The same rule distinguished arriving aliens from other inadmissible persons, explaining that "inadmissible aliens, except for arriving aliens," had bond redetermination before an Immigration Judge. Id.

The Second and Eleventh Circuits have rejected Respondents' historical leap. In *Cunha*, the Second Circuit held that the government overread H.R. Rep. No. 104-469 because the report addressed status and certain aspects of the entry doctrine in removal proceedings, not a universal mandatory-detention rule. *Cunha v. Freden*, 175 F.4th 61, 74–76 (2d Cir. 2026). In *Hernandez Alvarez*, the Eleventh Circuit likewise explained that IIRIRA targeted the exclusion/deportation distinction and created a unified removal proceeding with different burdens based on status, but did not show congressional intent to discard the entry doctrine for detention authority or to create a mass no-bond detention

TRAVERSE AND REPLY TO OSC – 4 of 21                    Pille-Valerio v. Jones
Case No. 3:26-cv-00194-SLG
Case 3:26-cv-00194-SLG     Document 31     Filed 06/29/26     Page 4 of 21

regie under § 1225. *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1290–95 (11th Cir. 2026).

The correct history is therefore straightforward. IIRIRA made lack of lawful admission relevant to whether a person is charged as inadmissible or deportable, and to the burden in removal proceedings. It did not make a later interior arrest the equivalent of inspection and authorization. For persons arrested and detained inside the United States pending removal proceedings, the custody statute is INA § 236, 8 U.S.C. § 1226.

**b. FACTUAL AND CUSTODY BACKGROUND RELEVANT TO THE RETURN**

Respondents emphasize alleged entry events and other facts that may bear, if at all, on bond merits. Dkt. 28-1 at 13. They do not answer the threshold detention-authority question.

Respondents allege that Petitioner attempted to enter near Calexico in July 2001, was twice returned, later reported entering without inspection near San Ysidro around August 1, 2001, and was later encountered in Anchorage, Alaska. Id. Those allegations do not show that Petitioner is presently seeking admission through inspection and authorization. The alleged inspection-related events occurred approximately twenty-five years ago and thousands of miles from her present custody location. Dkt. 11-2, Ex. B at 1.

Respondents' own custody exhibit is more important – an order for release on recognizance (Form I-220). Dkt. 11-2, Ex. B at 1. It states that Ms. Pille-Valerio was arrested in Anchorage, Alaska in 2003 and released, "[i]n accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations," on her own recognizance. Dkt. 11-2, Ex. B at 1. That was a § 236 custody release, not parole under § 212(d)(5)(A). Id.; *Matter of Castillo-Padilla*, 25 I. & N. Dec. 257, 258–63 (BIA 2010); *Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 749 (BIA 2023).

TRAVERSE AND REPLY TO OSC – 5 of 21                    Pille-Valerio v. Jones
Case No. 3:26-cv-00194-SLG
Case 3:26-cv-00194-SLG     Document 31     Filed 06/29/26     Page 5 of 21

That exhibit directly undercuts Respondents' theory. Respondents contend that Ms. Pille-Valerio is mandatorily detained under INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A) and that a § 1225 detainee may be released only through parole under § 212(d)(5)(A). Dkt. 28-1 at 9. But Respondents submitted an Order of Release on Recognizance, not a parole document. If she has always been subject to mandatory § 1225(b)(2)(A) detention, DHS could not have released her on recognizance under INA § 236, 8 U.S.C. § 1226. If DHS properly released her under INA § 236, 8 U.S.C. § 1226 after the Anchorage arrest, then her custody was not parole-only INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A) admission-processing custody. Respondents' own record confirms that Petitioner's custody historically was treated as interior INA § 236, 8 U.S.C. § 1226 custody.

## II.   <u>ARGUMENT</u>

### a. IIRIRA CHANGED REMOVABILITY CLASSIFICATION AND BURDEN; IT DID NOT CREATE A UNIVERSAL NO-BOND CUSTODY RULE.

Respondents rely on H.R. Rep. No. 104-469, pt. 1, at 225 (1996), to argue that Congress intended to eliminate "preferential treatment" for persons who entered without inspection. Dkt. 28-1 at 6. The cited history exists, but Respondents use it for a custody proposition it does not support. The passage concerns the shift from the pre-IIRIRA "entry" framework to the post-IIRIRA "admission" framework. It supports treating a person physically present without lawful admission as inadmissible, rather than deportable, in INA § 240, 8 U.S.C. § 1229a proceedings. INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), and INA § 240(c)(2)(A), 8 U.S.C. § 1229a(c)(2)(A). It does not support mandatory no-bond detention under INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A). See *Cunha v. Freden*, 175 F.4th 61, 74–76 (2d Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1290–95 (11th Cir. 2026).

The difference between removability classification and custody authority is decisive. The fact that a person may be charged as inadmissible under § 1182(a)(6)(A)(i), and may bear the burden assigned to applicants for admission under § 1229a(c)(2), does

TRAVERSE AND REPLY TO OSC – 6 of 21                    Pille-Valerio v. Jones
                                                       Case No. 3:26-cv-00194-SLG

not determine whether detention is governed by § 1225(b)(2)(A) or § 1226(a). Respondents treat charge and burden provisions as though they silently decide the custody statute. They do not.

Congress addressed custody separately. Section 236(a), codified at 8 U.S.C. § 1226(a), authorizes arrest, detention, and release on bond or conditional parole pending a decision on removal. Congress also knew how to impose mandatory detention and did so expressly in § 1226(c), which identifies specific categories subject to mandatory detention. 8 U.S.C. § 1226(c); *Nielsen v. Preap*, 586 U.S. 392, 396–97, 409 (2019). Respondents' reading would make § 1225(b)(2)(A) a broader mandatory-detention rule for interior EWI respondents, silently eclipsing § 1226(a) and the specific carveout in § 1226(c). That is not a plausible reading of the statutory structure. See *Cunha*, 175 F.4th at 77–79; *Lopez-Campos v. Raycraft*, 175 F.4th 713, 731–33 (6th Cir. 2026); *Hernandez Alvarez*, 175 F.4th at 1292–95.

The 1997 rule implementing IIRIRA confirms that IIRIRA's entry-to-admission change altered charge and burden, not custody authority for every interior EWI respondent. INS and EOIR stated that persons present without admission or parole remained eligible for bond and bond redetermination despite being applicants for admission. 62 Fed. Reg. at 10,323; *Lopez-Campos*, 175 F.4th at 731–32; *Cunha*, 175 F.4th at 74–76.

### b. SECTION 1225(b)(2)(A)'S TEXT IS AN ADMISSION-PROCESSING RULE, NOT A GENERAL INTERIOR-DETENTION RULE.

Respondents argue that the "plain language" of § 1225(b)(2)(A) mandates detention of all persons present without admission. Dkt. 28-1 at 13–15. The statute does not say that. It provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

TRAVERSE AND REPLY TO OSC – 7 of 21

Pille-Valerio v. Jones
Case No. 3:26-cv-00194-SLG

Case 3:26-cv-00194-SLG    Document 31    Filed 06/29/26    Page 7 of 21

8 U.S.C. § 1225(b)(2)(A).

Respondents read that sentence as if Congress had written: "Every applicant for admission shall be detained." Congress did not. It used "applicant for admission," "examining immigration officer," "alien seeking admission," and "for a proceeding under section 1229a." Each phrase should be given effect, if possible. *United States v. Menasche*, 348 U.S. 528, 538–39 (1955); *Cunha*, 175 F.4th at 69–72; *Hernandez Alvarez*, 175 F.4th at 1270–78.

The word "shall" does not answer coverage. "Shall be detained" identifies the consequence *if* § 1225(b)(2)(A) applies. It does not establish that Petitioner is within the statute. See *Jennings v. Rodriguez*, 583 U.S. 281, 297–306 (2018); *Lopez-Campos*, 175 F.4th at 718–20, 732–33. Nor does the phrase "clearly and beyond a doubt entitled to be admitted" transform every unadmitted interior respondent into a § 1225(b)(2)(A) detainee. That phrase belongs to an admission-inspection determination made by an examining immigration officer. It does not convert an interior ICE arrest into inspection for admission. *Posos-Sanchez v. Garland*, 3 F.4th 1176, 1182–83 (9th Cir. 2021); *United States v. Corrales-Vazquez*, 931 F.3d 944, 948 n.3, 954 (9th Cir. 2019).

Nor does § 1225(a)(1)'s applicant-for-admission label resolve custody. That provision states that "[a]n alien present in the United States who has not been admitted or who arrives in the United States … shall be deemed for purposes of this Act an applicant for admission." 8 U.S.C. § 1225(a)(1). The word "deemed" creates a statutory classification. It does not establish that every person within that classification is presently *seeking* lawful entry through inspection and authorization. *See Sturgeon v. Frost*, 587 U.S. 28, 47 (2019); *Cunha*, 175 F.4th at 70–72; *Hernandez Alvarez*, 175 F.4th at 1271–73.

Section 1225(b)(2)(A) confirms the distinction. Congress used both concepts: "applicant-for-admission status" and an "alien seeking admission." Respondents collapse them. The better reading gives independent effect to both. "Applicant for admission" identifies a deemed statutory status; "seeking admission" limits § 1225(b)(2)(A) to

persons in the operative admission process before an examining immigration officer. *Cunha*, 175 F.4th at 70–72; *Lopez-Campos*, 175 F.4th at 723–29; *Hernandez Alvarez*, 175 F.4th at 1270–78.

Respondents' redundancy argument exposes the flaw in their reading. If every person deemed an applicant for admission is necessarily "seeking admission," then the phrase "alien seeking admission" adds no independent limit to § 1225(b)(2)(A) – is is superfluous. But if "seeking admission" has independent force, then Respondents must also show that Petitioner is doing as much in the statutory inspection-and-admission sense. They cannot outside of a border entry process.

Section 1225(a)(3) does not solve that problem for Respondents. That provision requires inspection of persons who are "applicants for admission or otherwise seeking admission or readmission to or transit through the United States." 8 U.S.C. § 1225(a)(3). It is an inspection provision. Its reference to persons "otherwise seeking admission" confirms that the relevant statutory context is admission processing, including admission, readmission, or transit. It does not transform § 1225(b)(2)(A) into a detention rule for interior respondents who are not being inspected for lawful entry by operation of language. See *Hernandez Alvarez*, 175 F.4th at 1277–82; *Lopez-Campos*, 175 F.4th at 729–31; *Cunha*, 175 F.4th at 78–83.

The statute's structure points the same way. Section 1225 governs admission processing, including inspection, examination, expedited removal, withdrawal of an application for admission, parole from admission custody, and referral from that process into INA § 240, 8 U.S.C. § 1229a proceedings. 8 U.S.C. §§ 1182(d)(5)(A), 1225(a)–(b). Section 1226 separately governs arrest, detention, and release of "an alien" pending a decision on removal. 8 U.S.C. § 1226(a). Section 1225(b)(2)(A)'s reference to detention "for a proceeding under section 240[2]" shows that § 1225 may channel a person from

---

[2] 8 U.S.C. § 1229a

Case 3:26-cv-00194-SLG    Document 31    Filed 06/29/26    Page 9 of 21

admission processing into INA § 240, 8 U.S.C. § 1229a proceedings. Section 240 is the adjudicatory forum; it does not decide custody authority.

Therefore, respondents' "plain language" reading fails because it reads § 1225(b)(2)(A) as a general no-bond statute for unadmitted interior respondents, rather than as the admission-processing detention provision Congress enacted.

Here, Petitioner is not presently seeking admission within the meaning of § 1225(b)(2)(A). She is not at a port of entry, in pre-inspection, in deferred inspection, arriving at the border, or presenting herself for lawful entry after inspection and authorization. See 8 C.F.R. §§ 235.1(a), 235.1(f)(1), 235.2(a); *Posos-Sanchez*, 3 F.4th at 1182–83; *Hernandez Alvarez*, 175 F.4th at 1274–76. She is detained in the interior while INA § 240, 8 U.S.C. § 1229a proceedings are pending.

### c. SECTION 1226(a), NOT § 1225(b)(2)(A), GOVERNS PETITIONER'S PRESENT CUSTODY.

Respondents' admitted-aliens-only reading is wrong. The return states that § 1226 governs "aliens who have been admitted but later become removable." Dkt. 28-1 at 10. But § 1226(a) says "an alien," not "an admitted alien." 8 U.S.C. § 1226(a). That includes non-citizens present without admission. Courts may not add a limitation Congress omitted. *Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004).

The Second and Eleventh Circuits rejected the same admitted-aliens-only theory. *Cunha* held that the text of § 1226(a) is not limited to admitted persons. 175 F.4th at 68–70. *Hernandez Alvarez* likewise held that § 1226(a) reaches admitted and unadmitted noncitizens because either may be subject to removal proceedings. 175 F.4th at 1282–83. Section 1226(c) confirms the point: it is a carveout from § 1226(a)'s discretionary framework and expressly covers specified inadmissible categories. 8 U.S.C. § 1226(c)(1)(A), (D), (E); *Preap*, 586 U.S. at 409; *Hernandez Alvarez*, 175 F.4th at 1282–86; *Cunha*, 175 F.4th at 77–79.

Petitioner fits § 1226(a)'s text. She is in INA § 240, 8 U.S.C. § 1229a proceedings, Respondents identify no applicable § 1226(c) category, and DHS previously treated her

custody as INA § 236, 8 U.S.C. § 1226 custody when it released her on recognizance. Respondents' contrary theory requires rewriting § 1226(a) to cover only admitted noncitizens and rewriting § 1225(b)(2)(A) to cover interior custody outside the inspection-and-admission process. The statute supports neither revision. Petitioner's present custody is governed by § 1226(a), and she should receive a bond hearing.

### d. RESPONDENTS' CONSTRUCTION OF § 1225(b)(2)(A) CANNOT BE RECONCILED WITH THE INA'S INTERIOR-RELIEF STRUCTURE.

Respondents' construction of § 1225(b)(2)(A) creates a whole-Act problem. Statutory words are not read in isolation; they are read in context and with a view to their place in the overall statutory scheme. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000); *King v. Burwell*, 576 U.S. 473, 486, 497–98 (2015). Courts also avoid readings that make related provisions superfluous or distort the statute's coherent operation. *Duncan v. Walker*, 533 U.S. 167, 174 (2001); *United States v. Menasche*, 348 U.S. 528, 538–39 (1955). Respondents' reading fails that test.

Under Respondents' theory, every person physically present in the United States without admission is subject to mandatory, no-bond detention under § 1225(b)(2)(A), with release available only through parole under § 212(d)(5)(A). That construction does not merely interpret one detention clause. It turns lack of admission into a universal parole-only custody rule for interior respondents, even though Congress has repeatedly created statutory mechanisms for persons who have been physically present for years and entered without inspection i.e. without being admitted. The Respondent's reading simply erases all those forms of relief.

Congress knows how to impose mandatory detention on inadmissible persons when it intended that result. Section 1226(c), including the Laken Riley Act amendment, places defined categories of inadmissible persons into mandatory detention. 8 U.S.C. § 1226(c)(1)(A), (D), (E). Section 1226(c)(1)(E) specifically reaches certain persons inadmissible under § 1182(a)(6)(A), (6)(C), or (7) who have specified criminal contacts. Id. If every person inadmissible under § 1182(a)(6)(A) were already mandatorily detained

TRAVERSE AND REPLY TO OSC – 11 of 21        Pille-Valerio v. Jones
Case No. 3:26-cv-00194-SLG

without bond under § 1225(b)(2)(A), Congress's narrower command in § 1226(c)(1)(E) would do little work. The provision makes sense only if inadmissible persons, including some persons present without admission, can otherwise fall within § 1226's custody framework unless Congress expressly makes detention mandatory.

The relief provisions point the same way. Non-LPR cancellation – a form of relief within removal proceedings- that applies to, among others, persons who have not been inspected (admitted) and requires at least ten years of continuous physical presence. 8 U.S.C. § 1229b(b)(1). VAWA cancellation, which requires three years of continuous presence, likewise applies to certain abused spouses, parents, and children who are inadmissible or deportable and who have the required physical presence. 8 U.S.C. § 1229b(b)(2). These provisions assume that the INA will adjudicate relief for long-term interior respondents who were not inspected, hence admitted, in clear contradiction of Respondent's reading. Respondents' reading would place that same broad class into categorical § 235(b)(2)(A) no-bond detention based solely on lack of admission, even though Congress did not impose that detention consequence in the relief statutes or in § 1226(c). That reading would produce the absurd result that Congress created relief for individuals subject to § 235(b)(2)(A) while simultaneously making that relief practically unavailable.

Historical, section 245(i) is more direct. Congress expressly allowed certain physically present persons who "entered the United States without inspection[3]" to seek adjustment of status from inside the United States if they satisfy the statutory grandfathering and eligibility requirements. 8 U.S.C. § 1255(i)(1)(A)(i); 8 C.F.R. § 1245.10. That provision cannot be squared with Respondents' universal construction of § 1225(b)(2)(A). Congress did not create an in-country adjustment mechanism for those present without inspection and admission while silently making all those respondents subject to parole-only detention under § 235(b)(2)(A).

---

3 Again, without admission.

Pille-Valerio v. Jones
                                                   Case No. 3:26-cv-00194-SLG

Case 3:26-cv-00194-SLG    Document 31    Filed 06/29/26    Page 12 of 21

The humanitarian provisions further confirm the structure. VAWA (Violence Against Women Act) adjustment reaches certain self-petitioners notwithstanding the lack of inspected-and-admitted-or-paroled requirement. 8 U.S.C. § 1255(a), (c). Congress also created U- and T-visa frameworks with broad inadmissibility-waiver authority – particularly entry without inspection – and later adjustment mechanisms requiring physical presence in the United States. 8 U.S.C. §§ 1101(a)(15)(T), (U), 1182(d)(13), (14), 1255(l), (m).

The point as to these provisions is structural. Congress repeatedly accounted for interior presence, inadmissibility, entry without inspection, and admission-related waivers that contemplated presence of, in some cases, at least a decade. When Congress wanted detention consequences, it legislated them in custody provisions. When Congress wanted relief consequences, it legislated them in relief provisions. Respondents' construction of instantaneous detention without release mechanism renders those forms of relief superfluous.

In short, the whole of the Immigration and Nationality Act shows a reading where § 1225 governs inspection and admission processing; § 1226 governs interior custody pending a removal decision; and INA § 240, 8 U.S.C. § 1229a, supplies the forum for deciding inadmissibility, deportability, and relief. Respondents' construction disrupts that structure as a whole and should be rejected.

e. **8 C.F.R. § 235.3(b)(1)(ii) DOES NOT RECLASSIFY INTERIOR INA § 240, 8 U.S.C. § 1229a CUSTODY.**

Respondents and the adverse circuit decisions rely on 8 C.F.R. § 235.3(b)(1)(ii) to support a universal § 235 theory. See *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 506–07 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128, 1136–38 (8th Cir. 2026). The regulation cannot carry that weight.

Section 235.3 is titled "Inadmissible aliens and expedited removal," and subsection (b) is titled "Expedited removal." 8 C.F.R. § 235.3(b). The cited provision addresses what happens when an immigration officer determines, during expedited-

TRAVERSE AND REPLY TO OSC – 13 of 21        Pille-Valerio v. Jones
Case No. 3:26-cv-00194-SLG

removal screening, that an applicant for admission is not subject to removal under § 235(b)(1). Id. § 235.3(b)(1)(ii). It routes that person to an Immigration Judge for further inquiry under INA § 240, 8 U.S.C. § 1229a. Id. It is a routing provision, not a custody-reclassification rule.

The regulation's text confirms its limited function. It refers to persons described in § 235(b)(1)(A)(iii) and incorporates the two-year continuous-physical-presence limitation. 8 C.F.R. § 235.3(b)(1)(ii); 8 U.S.C. § 1225(b)(1)(A)(iii)(I)–(II). It determines whether expedited removal applies or whether the person must instead be routed to INA § 240, 8 U.S.C. § 1229a proceedings. It does not say that every person routed to INA § 240, 8 U.S.C. § 1229a is detained without bond under INA § 236, 8 U.S.C. § 1226.

That distinction controls here. Petitioner is not being screened for expedited removal under § 235(b)(1). She is detained in the interior while INA § 240, 8 U.S.C. § 1229a proceedings are pending. Respondents cannot use a regulation designed to route persons out of expedited removal and into INA § 240, 8 U.S.C. § 1229a proceedings as a universal no-bond rule for every interior EWI respondent already in INA § 240, 8 U.S.C. § 1229a proceedings. Nor can a regulation expand § 1225(b)(2)(A) beyond the statute Congress enacted. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386, 394 (2024).

Finally, the 1997 interim rule implementing IIRIRA's inspection, expedited-removal, detention, and INA § 240, 8 U.S.C. § 1229a framework confirms the same point. That rule stated that persons present without admission or parole remained "eligible for bond and bond redetermination." 62 Fed. Reg. at 10,323. Section 235.3(b)(1)(ii) therefore does not override § 1226(a) or create a universal no-bond rule.

### f. RESPONDENTS' ADVERSE AUTHORITIES AND RECENT SUPREME COURT CASES DO NOT CHANGE THE RESULT.

Respondents rely on *Buenrostro-Mendez* and *Avila*. Dkt. 28-1 at 3–4. Those decisions should not persuade here because they treat "applicant for admission" and "seeking admission" as functionally equivalent. *Buenrostro-Mendez,* 166 F.4th at 502–

Pille-Valerio v. Jones
Case No. 3:26-cv-00194-SLG

08; *Avila*, 170 F.4th at 1133–38. In doing so, they tolerate the surplusage created by that reading and rely on broad IIRIRA purpose to overcome the text.

The better-reasoned appellate authorities reject that approach. *Cunha* held that § 1225(b)(2)(A) does not apply to interior respondents who entered without inspection and were not apprehended at or near the border at the time of entry. 175 F.4th at 62, 70–76. *Lopez-Campos* held that "seeking admission" requires affirmative present pursuit of admission and that § 1226 governs interior respondents like the petitioners there. 175 F.4th at 723–33. *Hernandez Alvarez* held that the government conflates passive presence with actively seeking lawful entry after inspection and authorization. 175 F.4th at 1270–84. The most factually aligned district authority remains *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025), which addressed the same NWIPC/Tacoma bond-denial practice and declared that Bond Denial Class members are detained under § 1226(a), not § 1225(b)(2). See also *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239, 1261–62 (W.D. Wash. 2025) (ordering an individual § 1226(a) bond hearing and enjoining denial of bond on § 1225(b)(2) grounds).

*Mullin v. Al Otro Lado*, 609 U.S. ____, 2026 WL 1825741, at *3 (2026), also does not help Respondents. *Mullin* was not a detention-authority case. It decided when a person standing in Mexico at the border "arrive[d] in the United States" for purposes of §§ 1158(a)(1) and 1225(a). Id. If anything, *Mullin* confirms that § 1225 is tied to arrival, inspection, and admission processing. Petitioner is not outside the country seeking threshold access to inspection and is not an arriving person at the border. She is detained in the interior while reopened INA § 240, 8 U.S.C. § 1229a proceedings are pending.

*Blanche v. Muk Choi Lau*, 609 U.S. ____ (2026) (Supreme Court No. 25-429, decided June 23, 2026), is another recent Supreme Court case that deals with "seeking admission. Its description of the inspection process and the its treatment of "seeking admission" as a port centered action supports Petitioner's sequencing argument. *Lau* involved an LPR who temporarily left the United States, attempted to reenter at John F. Kennedy International Airport, was inspected by a border officer, was not admitted, and

TRAVERSE AND REPLY TO OSC – 15 of 21

Pille-Valerio v. Jones
Case No. 3:26-cv-00194-SLG

was paroled as per §1225(b)(2)(A) while the admission decision was deferred. Id., slip op. at 1–4. That is the admission-processing posture that is averred here. *Lau* treated "seeking admission" as a statutory classification which resulted from an actual admission-processing event tied to a port of entry event. Again, exactly what petitioners argue should be the use of the term "seeking admission."

### g. RESPONDENTS' DUE PROCESS ARGUMENT DOES NOT ANSWER THE STATUTORY CUSTODY QUESTION.

Respondents argue that Petitioner has limited due process rights and no constitutional right to a bond hearing. Dkt. 28-1 at 29–31. The Court need not reach the constitutional issue if it agrees that § 1226(a) governs. Section 1226(a) itself provides the custody framework Respondents have denied. 8 U.S.C. § 1226(a); *Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196–97 (9th Cir. 2022)*.

If the Court reaches due process, Respondents' framing is too broad. Petitioner is not an arriving alien stopped at the threshold. She is an interior respondent in reopened INA § 240, 8 U.S.C. § 1229a proceedings. The Supreme Court has long recognized that persons who have entered the United States, even unlawfully, are protected by due process in removal proceedings. *Zadvydas v. Davis, 533 U.S. 678, 693 (2001)*; *Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903). *Lopez-Campos* applied those principles in this same detention context and affirmed due-process relief for interior respondents detained without bond process. 175 F.4th at 733–37.

If Respondents believe Petitioner is a danger or flight risk, they may present that argument at a § 1226(a) custody redetermination hearing. 8 C.F.R. §§ 1003.19, 1236.1(d). Those merits arguments do not justify denying the hearing altogether. *Rodriguez Diaz,* 53 F.4th at 1196–99.

### h. ANY § 1226(a) CUSTODY REDETERMINATION HEARING MUST PROVIDE MEANINGFUL PROCEDURAL PROTECTION.

If the Court orders a § 1226(a) custody redetermination hearing, that hearing should provide meaningful process. Petitioner should receive a hearing before a neutral

adjudicator, with counsel permitted to appear, and Respondents should bear the burden to justify continued detention by clear and convincing evidence that Petitioner presents a danger to the community or a flight risk. See *Perera v. Jennings* ("*Perera I*"), No. 21-cv-04136-BLF, 2021 WL 2400981, at *6 (N.D. Cal. June 11, 2021) ("the government bears the burden of justifying Petitioner-Plaintiff's detention, by clear and convincing evidence").

The neutral adjudicator must also consider Petitioner's financial circumstances and whether alternative conditions of release would reasonably ensure appearance and protect the community. See *Hernandez v. Sessions*, 872 F.3d 976, 990–91 (9th Cir. 2017) ("there is no legitimate reason for it not to consider the individual's financial circumstances and alternative conditions of release"). Bond should not be set higher than necessary to serve the purpose of ensuring appearance. See id. at 990 ("not set bond at a greater amount than that needed to ensure the person's appearance"). If Respondents cannot meet their burden, Petitioner should be released immediately, subject to any lawful restrictions or conditions the neutral adjudicator determines are necessary.

### i. THE COURT SHOULD DENY RESPONDENTS' REQUEST FOR ABEYANCE.

Respondents alternatively ask the Court to hold this habeas case in abeyance pending the Ninth Circuit's decision in *Rodriguez Vazquez v. Bostock*, No. 25-6842. Dkt. 28-1 at 31. That request should be denied.

Habeas addresses present custody. 28 U.S.C. § 2241(c)(3). Petitioner is detained now, and Respondents have denied her a custody redetermination hearing based on their § 1225(b)(2)(A) theory. Holding the case in abeyance would prolong the same custody injury the Amended Petition challenges.

No binding Ninth Circuit decision currently resolves the question presented. Until the Ninth Circuit decides otherwise, this Court must decide the habeas petition before it. 28 U.S.C. § 2243. The existence of a pending appeal in another case does not justify

Case 3:26-cv-00194-SLG     Document 31     Filed 06/29/26     Page 17 of 21

leaving Petitioner detained without the custody process required by the statute governing her detention.

Respondents' own alternative remedy confirms why abeyance is inappropriate. They state that, if the Court concludes § 1226(a) applies and declines abeyance, the proper remedy would be a bond hearing under § 1226(a) within fourteen days. Dkt. 28-1 at 31. The practical question is therefore not whether the Court has a workable remedy; Respondents concede that it does. The question is whether Petitioner should remain detained without bond process while Respondents wait for a potentially favorable appellate ruling. Habeas does not require that delay.

The Court should deny abeyance and decide the statutory custody question now. If § 1226(a) governs, the remedy should be a prompt custody redetermination hearing before an Immigration Judge with authority to consider release.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Court should reject Respondents' § 1225(b)(2)(A) theory, deny abeyance, grant the Amended Petition to the extent necessary to correct the custody authority, and order Respondents to provide Petitioner a prompt § 1226(a) custody redetermination hearing with authority to consider release. If Respondents do not provide that hearing within the time set by the Court, Petitioner should be released subject to any lawful conditions the Court deems appropriate.

//

//

//

//

RESPECTFULLY SUBMITTED this 29th day of June, 2026.

/s/ Nicolas A. Olano
Nicolas A. Olano
Alaska Bar No. 2105042
Florida Bar No. 0528961
NATIONS LAW GROUP
2525 Blueberry Road, Suite 207
Anchorage, Alaska 99503
Tel: (907) 770-0909
Fax: (907) 770-0902
Email: nicolas@nationslawak.com
Attorney for Petitioner

**VERIFICATION REGARDING WORD COUNT**

I, Nicolas A. Olano, certify that Petitioner's Traverse to Federal Respondents' Return on Order to Show Cause contains approximately 5,700 words, excluding the caption, signature block, certificate of service, and any items excluded from the word-count calculation under Local Civil Rule 7.4(a).

This word count was calculated using the word-count function of Microsoft Word.

DATED: June 29, 2026.

/s/ Nicolas A. Olano

NICOLÁS A. OLANO (Alaska Bar No. 2105042)
NATIONS LAW GROUP
2525 Blueberry Road, Suite 207
Anchorage, Alaska 99503
Tel: (907) 770-0909 / Fax: (907) 770-0902
Email: nicolas@nationslawak.com
Attorney for Petitioner

# CERTIFICATE OF SERVICE

I certify that on June 29, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

DATED: June 29, 2026.

/s/ Nicolas A. Olano

NICOLÁS A. OLANO (Alaska Bar No. 2105042)
NATIONS LAW GROUP
2525 Blueberry Road, Suite 207
Anchorage, Alaska 99503
Tel: (907) 770-0909 / Fax: (907) 770-0902
Email: nicolas@nationslawak.com
Attorney for Petitioner